IBM CREDIT CORPORATION, Plaintiff-Respondent-Petitioner,

v.

VILLAGE OF ALLOUEZ, Paul M. Quigley, Assessor of the Village of Allouez, Village Board of Allouez and Village of Allouez Board of Review, Defendants-Appellants.†

Supreme Court

No. 93–1012. Oral argument October 11, 1994.—Decided December 6, 1994.

(Also reported in 524 N.W.2d 132.)

†Motion for reconsideration denied January 17, 1995.

144

For the plaintiff-respondent-petitioner there were briefs by *Robert Horowitz, Lynn J. Bodi* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison and oral argument by *Robert Horowitz.*

For the defendants-appellants there was a brief by *David J. Condon* and *David J. Condon, S.C.,* Green Bay and oral argument by *David J. Condon.*

STEINMETZ, J. This case presents one issue: If a personal property tax is erroneously paid on tax-exempt property, and the taxpayer discovers the error after the date that the tax was due, is the taxpayer

entitled to a refund under sec. 70.43, STATS.,[1] which provides for correction of a "palpable error," including taxation of exempt property? The Brown county circuit court, Judge William M. Atkinson, held that such a taxpayer is entitled to a refund under sec. 70.43. The court of appeals reversed, holding that sec. 70.43 does not create a cause of action in favor of such a taxpayer. We now reverse the court of appeals.

[1] Because the tax assessment at issue in this case was for the 1990 tax year, all statutory citations are to the 1989–90 statutes, unless otherwise noted.

Section 70.43, Stats., provides, in pertinent part, as follows:

**Correction of errors by assessors.** (1) In this section, 'palpable error' means any of the following:

. . .

(c) An assessment of property that was exempt by law from taxation at the time fixed by law for making the assessment.

. . .

(2) If the assessor discovers a palpable error in the assessment of . . . an item of personal property that results in the . . . property having an inaccurate assessment for the preceding year, the assessor shall correct that error by adding to or subtracting from the assessment for the preceding year. The result shall be the true assessed value of the property for the preceding year. The assessor shall make a marginal note of the correction on that year's assessment roll.

(3) The dollar amount of the adjustment determined in the correction under sub. (2) shall be referred to the board of review and, if certified by that board, shall be entered in a separate section of the current assessment roll, as prescribed by the department of revenue, and shall be used to determine the amount of additional taxes to be collected or taxes to be refunded. The dollar amount of the adjustment may be appealed to the board of review in the same manner as other assessments. The taxes to be collected or refunded shall be determined on the basis of the net tax rate of the previous year, taking into account credits under s. 79.10. The taxes to be collected or refunded shall not be shared with or charged back to other taxing jurisdictions and shall be reflected on the tax roll in the same manner as omitted property under s. 70.44, but any such adjustment may not be carried forward to future years.

The facts are undisputed. In 1990, IBM Credit Corporation (ICC) declared $8,965,209.14 in personal property subject to assessment. Based on this figure, the village of Allouez (the Village) assessed a tax of $256,725.20. ICC paid the tax on January 28, 1991. On February 6, 1991, ICC discovered that some of the personal property that it had declared taxable and paid tax on was, in fact, tax-exempt. Specifically, ICC mistakenly paid tax on a marketing research computer that it had leased to A.C. Nielsen Company, a marketing research firm. The computer was tax-exempt under sec. 70.111(24), Stats.,[2] which exempted certain marketing research computers.

On May 10, 1991, ICC wrote a letter to Bowmar Appraisal, a corporation that does real estate assessments for the Village. The letter stated that ICC had paid tax on tax-exempt property and requested a refund of $214,046.21. The Village tax assessor, Paul Quigley, wrote to ICC acknowledging receipt of the letter to Bowmar Appraisal and stating that the Village would credit ICC on its 1991 assessment. The Village assessor did not offer to refund the overpayment. ICC wrote to the Village assessor, repeating its request for a refund rather than a credit. The Village assessor responded by requesting more information and documentation on the claim. ICC complied with the request. Thereafter, the Village attorney informed

---

[2] Section 70.111(24), Stats., provided as follows:

MARKETING RESEARCH COMPUTERS. Computers with rated capacities of at least 30 million instructions per second and computer storage devices that have a capacity of at least 7.5 gigabytes and that are used in conjunction with those computers, if that property is placed in use in this state after January 1, 1989, is owned or leased by a marketing research organization and is used for at least 90% of its use to receive, process and store data received directly by those computers by electronic means.

ICC that because it did not meet the requirements of a timely claim under sec. 74.35(2), Stats., the Village would neither grant ICC's request for a refund nor credit ICC on its 1991 assessment. The Village board subsequently denied ICC's request for a refund. ICC received notice of the board's decision on April 1, 1992.

On May 21, 1992, ICC commenced this action under sec. 70.43, Stats., seeking $214,046.21 plus interest from the Village. In the alternative, ICC requested either a writ of mandamus compelling the Village tax assessor and the Village board to correct the assessment or a writ of certiorari ordering review of the board's decision to deny ICC's request. ICC and the Village each moved for summary judgment. The trial court granted ICC's motion and awarded ICC $214,046.21 plus interest. The trial court did not address ICC's requests for a writ of mandamus or a writ of certiorari.

In a published opinion, the court of appeals reversed. *IBM Credit Corp. v. Village of Allouez,* 179 Wis. 2d 741, 508 N.W.2d 42 (Ct. App. 1993). Relying on its earlier decision in *State ex rel. Fountain v. City of Green Bay,* 105 Wis. 2d 699, 314 N.W.2d 904 (Ct. App. 1981), the court of appeals held that "[n]othing in sec. 70.43 creates a cause of action for a tax refund in favor of the taxpayer or provides a procedure by which a taxpayer [may] claim a refund from the taxing authority." *IBM Credit Corp.,* 170 Wis. 2d at 746. Instead, sec. 70.43, STATS., merely states the "procedure[ ] available to a taxing authority once it has determined that property has been erroneously assessed and a tax refund is appropriate." *Id.* at 747. Furthermore, the court opined that sec. 74.35 provides the exclusive procedure by which a taxpayer may file a claim against a municipality for a refund of unlawful taxes. *Id.* Because ICC

never filed a claim under sec. 74.35, the court concluded that the Village was not required to refund the taxes collected on the exempt property. The court then remanded the case to the trial court for further factfinding on whether ICC was entitled to a writ of mandamus or certiorari. *Id.* at 748. ICC petitioned this court for review, which was granted.

The issue in this case boils down to whether sec. 70.43, STATS., creates a cause of action for a taxpayer to recover taxes paid on tax-exempt property. Resolution of this issue requires us to interpret the statute and apply it to undisputed facts. The interpretation and application of a statute to undisputed facts is a question of law, which we review without deference to the lower courts. *Ball v. District No. 4 Area Board.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

We note that this case comes before this court on a motion for summary judgment and that questions of law are properly resolved on summary judgment. *State v. Clausen,* 105 Wis. 2d 231, 243, 313 N.W.2d 819 (1982). When reviewing a grant of summary judgment, which is governed by sec. 802.08, Stats., we apply the same methodology as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816, 820 (1987). That methodology is well-established; therefore, we need not repeat it here. *See id.*

The Village argues that the court of appeals correctly held that sec. 74.35, Stats., sets forth the exclusive procedure that a taxpayer must follow to obtain a refund for "unlawful taxes."[3] To recover unlawful taxes under sec. 74.35(5)(a), a taxpayer must

---

[3] Under secs. 74.33(1)(c) and 74.35(1), Stats., a tax on personal property that is tax-exempt is an "unlawful tax."

file a claim by January 31 of the year in which the taxes are payable. ICC paid its taxes for the 1990 tax year on January 28, 1991. Nine days later, on February 6, 1991, ICC discovered that it had paid taxes on tax-exempt property. To obtain a refund under sec. 74.35, ICC had to file a claim by January 31, 1991. Because ICC did not discover the error until after January 31, 1991, ICC never filed a claim under sec. 74.35. Instead, ICC commenced an action seeking a refund under sec. 70.43.

Under sec. 70.43(2), Stats., if an assessor discovers a "palpable error" in the assessment of personal property, the assessor must correct the error.[4] Section 70.43(1)(c) defines "palpable error" to include "[a]n assessment of property that was exempt by law from taxation at the time fixed by law for making the assessment." Thus, the assessment of taxes on tax-exempt personal property is "palpable error." The Village does not dispute that ICC paid taxes on a computer that was tax-exempt, or that assessment of the computer was a palpable error under sec. 70.43(1)(c).[5] Nevertheless, the Village argues that it is entitled to keep the $214,046.21 in erroneously paid taxes because sec. 70.43 provides a procedure that the Village may follow,

---

[4] Section 70.43(2) provides, in pertinent part: "If the assessor discovers a palpable error in the assessment of . . . an item of personal property that results in . . . an inaccurate assessment for the preceding year, the assessor *shall* correct that error by adding to or subtracting from the assessment for the preceding year." *Id.* (emphasis added).

[5] We note that the statutory language provides that palpable error occurs whenever there is an assessment of tax-exempt property. Thus, a palpable error occurs regardless of whether the taxpayer or the assessor makes the error. Section 70.43(1)(c), Stats.

but does not provide the taxpayer with either a substantive right or a procedure to recover unlawful taxes. We disagree and hold that sec. 70.43 provides the taxpayer with both a substantive right and a procedure to recover unlawful taxes.

The Village's argument and the court of appeals' decision rest heavily upon *Fountain,* 105 Wis. 2d 699. In *Fountain,* the city assessor erroneously underassessed the value of the taxpayer's property at $55,600 for the 1979 tax year. The correct value was $150,600. Relying on the 1979–80 version of sec. 70.43, Stats.,[6] the city of Green Bay sought to recover the lost taxes by increasing the taxpayer's property tax assessment in the following year. However, the court of appeals held that sec. 70.43 did not authorize an assessor to recapture or refund erroneously assessed taxes by increasing or decreasing the following year's property tax. The court concluded that the statute "simply provide[d] a procedure for an administrative correction in the present year's tax roll." *Id.* at 703.

The *Fountain* court noted that under the general scheme of property taxation, assessors must assess property at its full market value. The court reasoned that sec. 70.43, Stats., could not authorize an assessor

---

[6] Section 70.43, Stats. (1979–80) provided:

Correction of errors by assessors. If any assessor shall discover that any error was made in any assessment roll during the preceding year, by which the valuation of any real or personal estate subject to taxation was increased or reduced from the true assessed valuation thereof, he shall correct such error by adding to or subtracting from, as the case may be, the valuation of such property on his assessment roll as fixed by him, the amount omitted from or added to the true assessed valuation in consequence of such error and make a marginal note of such correction, and the result shall be taken as the true valuation of such property for the latter year and a final correction of such error.

to correct an error by increasing or decreasing the following year's property tax, because such an interpretation would require the assessor to assess property at an inflated or deflated value for the following year in order to adjust for the preceding year's erroneous assessment. The court believed that this result would be contrary to the general mandate that assessors assess property at its full market value.[7]

In a clear response to the court's decision in *Fountain,* the legislature repealed and recreated sec. 70.43, Stats. *See* 1983 Wis. Act 300; *see also* Drafting Records, Legislative Reference Bureau, 1983 Wis. Act. 300. The new statute became effective on April 26, 1984. The effect of the new statute, as shown by its language and its legislative history, is to overturn the court's decision in *Fountain.* Subsection (3) of the 1989–90 statute specifically provides that the amount of the correction noted on the previous year's assessment role "shall be used to determine the amount of . . . taxes to be *refunded.*" Section 70.43(3) (emphasis added). The statute in place when *Fountain* was decided did not contain this or any other language authorizing the collection of additional taxes or the refund of taxes once an error was corrected by the assessor.

In recreating the statute, the legislature clearly intended that any correction noted on the previous year's assessment role would result in the collection of

---

[7] The *Fountain* court was also concerned about which tax rate would be used to determine the amount of tax to be recaptured or refunded. Addressing this concern, the 1989–90 version of sec. 70.43(3) provides that "[t]he taxes to be collected or refunded shall be determined on the basis of the net tax rate of the previous year."

additional taxes or a refund.[8] Indeed, it would be illogical to conclude that by using the words "shall" and "refund," the legislature intended that sec. 70.43, Stats., would merely require the administrative function of noting corrections on the tax roll. The only reasonable explanation for this language is that the legislature intended to overturn the court's decision in *Fountain.*[9]

We hold that sec. 70.43, Stats., provides the taxpayer with both a substantive right and a procedure to recover unlawful taxes. To hold otherwise would render the "refund" language in sub. (3) meaningless. Under our "cardinal rule of statutory construction," we will attempt to interpret a statute so that no word or clause is rendered surplusage. *Cook v. Industrial Comm.,* 31 Wis. 2d 232, 239–40, 142 N.W.2d 827, 831 (1966).

Moreover, to hold that sec. 70.43, Stats., does not provide the taxpayer with both a substantive right and procedure to recover unlawful taxes would create an absurd result. Taxpayers would be required to strictly comply with the January 31 deadline under sec. 74.35 for recovering an overpayment of taxes caused by a

---

[8] The official comment to sec. 70.43, Stats., provides further evidence that the legislature intended refunds to be paid when a taxpayer paid an unlawful tax. The comment states: "Revises s. 70.43(3), to state clearly that amounts of additional taxes collected or amounts of taxes refunded as a result of corrections made under this section are retained, or paid out, solely by the taxation district." Section 70.43, Comments—1987 Act 378.

[9] We note that in its brief, the Village did not respond to ICC's argument that in repealing and recreating the statute the legislature intended to overturn the court's decision in *Fountain.*

palpable error. In sharp contrast, taxing bodies would be afforded discretion[10] and greater time under sec. 70.43(3) to recover or refund the underpayment or overpayment of taxes caused by palpable error. As the facts in this case demonstrate, not all taxing bodies will voluntarily refund taxes, even when the taxes are admittedly unlawful. We find that this result is absurd, unfair, and clearly not intended by the legislature. As we have previously stated, "[i]t is important that taxpayers receive fair play from tax officials." *Department of Revenue v. Moebius Printing Co.*, 89 Wis. 2d 610, 638, 640, 279 N.W.2d 213 (1979).

The interpretation of the statute advanced by the Village would create not only an absurd result, but also a harsh result. Personal property taxes are assessed as of January 1 of each year, sec. 70.10, Stats., and are due no later than January 31 of the following year. Section 74.11(4). Thus, if a taxpayer waits until January 31 and then mistakenly pays taxes on tax-exempt property, under the interpretation advanced by the Village, the taxpayer must discover the mistake and file a claim for a refund on the same day that the taxpayer pays the tax. We suspect that most taxpayers do not discover that they have made a mistake on the day it is made.

Finally, the interpretation advanced by the Village would frustrate the general purpose of the taxing statutes and the specific purpose of sec. 70.43, Stats. Taxing statutes generally seek to promote the good faith, orderly assessment and payment of taxes. Section 70.43 specifically seeks to ensure that taxing

---

[10] In light of the "collect" and "refund" language in 70.43(3), Stats., at a minimum the statute provides the taxing body with a means to collect or refund taxes when an overassessment or underassessment has occurred.

bodies collect the correct amount of tax—no more and no less. The interpretation of sec. 70.43 espoused by the Village would frustrate both purposes, because it would allow the Village to keep an admittedly incorrect and unlawful amount of tax.

We are not persuaded that sec. 74.35, Stats., is the exclusive procedure for recovering unlawful taxes. Indeed, nothing in the language of sec. 74.35 even suggests that it is the exclusive procedure for recovering unlawful taxes. To the contrary, sec. 74.35(5) states that "a claim *under this section* shall be filed by January 31 of the year in which the tax is payable." (Emphasis added.) This language suggests that claims may be brought under other statutory sections. Thus, we conclude that sec. 70.43 provides the taxpayer with an alternative to suing under sec. 74.35.

Returning to the facts in this case, we again underscore that the Village does not dispute that ICC paid taxes on a computer that was tax-exempt, or that assessment of the computer was a palpable error under sec. 70.43(1)(c), Stats. In 1991, the Village assessor received actual notice that a palpable error occurred in the 1990 assessment of ICC's personal property.[11] Thus, under sec. 70.43(2), the assessor was required to correct the error by subtracting the amount in error,

---

[11] Nothing in sec. 70.43, Stats., requires that a lawsuit to enforce compliance with that section be brought during the year in which the assessor discovers the palpable error. The assessor, not the taxpayer, is required to act during the year after the erroneous assessment. When the assessor acknowledged receiving ICC's request for refund, over five months remained in 1991 to correct the error that occurred in the preceding year, 1990. Instead of correcting the error, the assessor and the Village attorney delayed.

155 .

$214,046.21, from the 1990 assessment. The assessor was then required, under sec. 70.43(3), to refer the amount of the adjustment to the Village board of review. The board was then obligated to decide whether to certify the adjustment. While we agree with the Village's assertion that the assessor's correction of the assessment roll under sec. 70.43(2) does not automatically result in a refund inasmuch as the board must first certify the adjustment, we conclude that the Village board of review had an affirmative duty to certify and refund the $214,046.21 to ICC, because the Village admitted that it knew that the taxes were paid on tax-exempt property and therefore were unlawful.[12]

Because we hold that ICC is entitled to recover the unlawful taxes under sec. 70.43, Stats., we do not reach ICC's request for either writ of mandamus or a writ of certiorari.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the circuit court with instructions to reinstate the judgment awarding ICC $214,046.21 plus interest.

[12] That the village has already distributed shares of the taxes collected in error to other participating governmental units is not a defense to failure to follow the statutes. In fact, counsel for the Village admitted during oral argument that the distribution of the taxes should not affect the outcome of this case.