RIVER BANK OF DE SOTO f/n/a De Soto State Bank, Plaintiff-Appellant,

v.

Raymond FISHER, Defendant,

Karen Fisher DUNCAN, Defendant-Respondent-Petitioner.

Supreme Court

*No. 95–0148–FT. Oral argument May 29, 1996.——Decided June 26, 1996.*

(Also reported in 550 N.W.2d 429.)

For the defendant-respondent-petitioner there were briefs by *Ann I. Brandau* and *Hoffman, Addis, Pittman & Brandau*, LaCrosse and oral argument by *Ann I. Brandau and Phillip J. Addis.*

For the plaintiff-appellant there was a brief by *Donald K. Schott, Valerie L. Bailey-Rihn* and *Quarles & Brady*, Madison and *Daniel J. Duke*, LaCrosse and oral argument by *Valerie L. Bailey-Rihn.*

Amicus curiae brief was filed by *John E. Knight, James E. Bartzen* and *Boardman, Suhr, Curry & Field*, Madison for the Wisconsin Bankers Association.

JON P. WILCOX, J. The defendant-respondent-petitioner Karen Fisher Duncan (Duncan) seeks review of an unpublished decision of the court of appeals which reversed a judgment and order of the circuit court for Vernon County, Michael J. Rosborough, Judge. The circuit court had concluded that the plaintiff-appellant River Bank of De Soto's (Bank) conduct throughout a consumer loan transaction was "unconscionable" under the Wisconsin Consumer Act, Wis. Stat. § 425.107 (1991-92)[1], thereby relieving Duncan of her liability on a debt and awarding her a judgment of $100, as well as attorney fees and expenses of $2,251.09. *See* Wis. Stat. § 425.303. The

_____

[1] All future references to Wisconsin Statutes will be to the 1991-92 version. Section 425.107(1) provides as follows:

(1) With respect to a consumer credit transaction, if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall, in addition to the remedy and penalty authorized in sub. (5), either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.

court of appeals reversed, holding that the Bank's conduct was not unconscionable, as that term is used in the Wisconsin Consumer Act. *See River Bank of De Soto v. Duncan*, No. 95-0148-FT, unpublished op. at 2 (Wis. Ct. App. July 6, 1995). Duncan appealed the decision, and her petition for review was granted by this court.

The facts in this case are undisputed. When Duncan and Raymond Fisher (Fisher) were divorced in 1990, Fisher was assigned an outstanding debt of $4,819 to River Bank as part of the divorce settlement. Since the couple had dealt with the bank in the past, Fisher sought to arrange refinancing of this settlement debt through the Bank. He was unable to qualify for the loan on his own, and therefore, the Bank required that Duncan co-sign the promissory note. She agreed, and the note was executed in August 1990. The note was designated for a one-year period with a balloon payment due at the expiration of such term. The 1990 note was secured by two antique automobiles owned by Fisher, which had also served to collateralize the couple's prior obligations to the Bank. The Bank retained possession of the titles to the antique automobiles, which represented Fisher as the owner, and the Bank as first lienholder.

During the term of this loan, Fisher failed to make payments in November and December 1990, as well as in January 1991. Both Fisher and Duncan received notices of their right to cure the default from the bank, and the payments were made. Upon the expiration of the life of the 1990 loan, in June of 1991, the Bank again required both parties to sign a renewal note, rather than call the note due. The 1991 note was executed on June 26, 1991, and signed by both Fisher and Duncan. The language in the 1991 note was identical to

that contained in the 1990 note and previous notes Fisher and Duncan had signed with the Bank since 1982. The 1991 Consumer Universal Note (Wisconsin Banking Association Form 455) contained the following clause:

> Without affecting my liability or the liability of any endorser, surety or guarantor, Lender may, without notice, grant renewals or extensions, accept partial payments, release or impair any collateral security for this Note or agree not to sue any party liable on it. Presentment, protest, demand and notice of dishonor are waived . . . . This Note may not be supplemented or modified except in writing.

A debtor is not given the opportunity to negotiate or delete the above clause when executing a consumer loan with the Bank, as it is part of a standard banking form expressly approved by the Office of the Commissioner of Banking, the administrator of the Wisconsin Consumer Act. *See* Wis. Stat. § 426.104(4)(b).[2]

After the 1991 note was signed by both parties, Fisher moved to Texas in September of 1991. Duncan immediately contacted the Bank, providing it with Fisher's new address, and expressing her concern that Fisher would thereafter try to hide the collateral. The antique automobiles were later moved to Texas with-

---

[2] Section 426.104(4)(b) provides as follows:

(b) Any act, practice or procedure which has been submitted to the administrator in writing and either approved in writing by the administrator or not disapproved by the administrator within 60 days after its submission to the administrator shall not be deemed to be a violation of chs. 421 to 427 or any other statute to which chs. 421 to 427 refer notwithstanding that the approval of the administrator or nondisapproval by the administrator may be subsequently amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

out notification being provided to the Bank. However, Fisher continued to remain current on his payments to the Bank on the 1991 note through June of 1992. During this period, the Bank did not contact either Fisher or Duncan regarding the 1991 note until it was set to expire on June 26, 1992.

Upon the expiration of the 1991 note, Fisher independently sought an extension of time in order to satisfy his obligation to the Bank. He filled out a loan application in July of 1992, requesting a renewal of the 1991 note, which the Bank agreed to grant. Despite its past practice of requiring Duncan to sign any promissory note or renewal of the same, Fisher and the Bank executed a consumer loan agreement for "renewal" of the 1991 note on August 10, 1992. The Bank thereafter sought the co-signature of Duncan on what it deemed "renewal documents," evidencing Fisher's request for renewal. Duncan refused to sign the papers, based upon Fisher's past delinquencies in paying on previous notes, and her belief that he intended to move the collateral to an undisclosed location. Duncan insisted that the Bank call the 1991 note due and liquidate Fisher's automobiles in satisfaction of the debt.

Fisher continued to make regular payments on the debt until May 1993. In early June 1993, when the debt was delinquent, Fisher notified the Bank that he was arranging refinancing in Texas to pay the debt in full. He requested that the automobile titles be sent to him in Texas in order to facilitate the refinancing process. The Bank complied, and sent them to Texas without signing the titles or intending to release its lien on the collateral. In July 1993, Fisher informed the Bank that he did not intend to make any further payments on the note, and that the automobiles were now in Mexico.

The Bank explored the possibility of pursuing criminal charges against Fisher, and issued notices of Right to Cure to both Fisher and Duncan. After these notices did not produce a response, the Bank commenced an action against Fisher and Duncan for their obligations on the 1992 note. Fisher did not appear, and the Bank obtained a default judgment against him. Duncan was present, and claimed that she was not liable under the terms of the 1992 note as she had not signed the document, and furthermore, because of the Bank's unconscionable conduct in releasing the car titles to Fisher.

Following a bench trial, the circuit court found the Bank's course of conduct toward Duncan unconscionable and in violation of the Wisconsin Consumer Act, as defined in Wis. Stat. § 425.107. The court determined that the Bank's releasing of the unsigned titles to Fisher left Duncan in a position in which she had "an absence of meaningful choice,"[3] and should therefore be relieved of any liability under the note. The court of appeals reversed, finding it significant that Duncan had not shown that *before* the Bank mailed the titles to Fisher, she had a "meaningful choice." Therefore, the appellate court reasoned:

> Because Duncan failed to show that she had a "meaningful choice" regarding the security *before* the bank mailed the titles to Fisher, she failed to show the bank's conduct in that regard affected her choices *after* that event. We conclude that the bank's conduct did not deprive Duncan of a meaningful choice. For that reason we conclude that the bank's conduct was not "unconscionable."

[3] *See Discount Fabric House v. Wisc. Telephone Co.*, 117 Wis. 2d 587, 601, 345 N.W.2d 417 (1984).

*River Bank*, No. 95-0148-FT, op. at 8. (Emphasis added).

The case before us requires this court to consider the obligations of the parties relative to a series of promissory notes, as well as their conduct under the Wisconsin Consumer Act, which have combined to produce the current litigation. The interpretation and application of a statute to undisputed facts is a question of law, which this court reviews without deference to the lower courts. *IBM Credit Corp. v. Allouez*, 188 Wis. 2d 143, 149, 524 N.W.2d 132 (1994).

Prior to any analysis of the alleged "unconscionable" conduct on the part of the Bank for purposes of the Wisconsin Consumer Act, we consider a procedural argument raised by Duncan in her brief as well as during oral argument. Duncan argues that for the first time since the pleadings were filed in this case, the Bank, in its brief to this court, has conceded that Duncan was not liable under the terms of the 1992 note. The pleadings, however, demonstrate that the 1992 note, once in default, had formed the basis for the Bank's suit against both Fisher and Duncan. Yet, referring to Duncan's refusal to co-sign the 1992 note, the Bank states in its brief that "Duncan did not consider herself bound by its terms when the Bank renewed the [1992] note with Fisher. At that point, neither did River Bank." (Appellant's Brief, at 26). A position to the contrary has not thereafter been expressed by the Bank.

Despite this concession before the court, the Bank seeks to rely upon a letter which it sent to Duncan in August 1992, stating that Duncan would remain legally obligated to repay the balance owing on the original promissory note, renewed in June 1991.

Duncan, however, asserts that there is no unpaid balance on such note, as the Bank's own records demonstrate that the Bank applied the proceeds of the new 1992 note, which it executed with Fisher alone, to payment of the balance of the 1991 note, thereby closing the account on August 18, 1992. Duncan concludes that the present balance due and payable on the 1992 note simply represents a legal obligation which Fisher undertook with the Bank in July 1992, and because she refused to co-sign, she is not obligated under its terms. In light of this contention, we must therefore shift our focus to a consideration of the payment history of the notes in question, as provided in the record before us.

■

The payment history of the 1990 note, as evidenced by the Bank's records, indicates that in June 1991, prior to the execution of the 1991 renewal note, the 1990 note had an unpaid balance of $4,694.16. Shortly after the 1991 renewal note was signed by both Fisher and Duncan, the Bank records show that the 1990 note was marked "paid by renewal" on June 29, 1991. In accord with standard banking practices, this notation illustrated that the 1990 note was not extinguished, but was simply being renewed by the Bank under the same terms and conditions, absent an express agreement to the contrary. It is the long and well settled doctrine in this state that a renewal of a note or the extension of time in which to pay a pre-existing debt is not a discharge or extinguishment of the original obligation. *Bank of Verona v. Stewart*, 223 Wis. 577, 270 N.W. 534 (1937); *Rielly v. Arnsmeier*, 220 Wis. 564, 265 N.W. 713 (1936) (citing *Rosendale State Bank v. Holland*, 195 Wis. 131, 127, 217 N.W. 645 (1928)). At this point in the parties' banking relationship, both Fisher and Duncan remained legally

obligated under the original 1990 note by virtue of the 1991 renewal.

The controversy in this case, however, focuses upon the payment history of the 1992 note. Unlike the previously undisputed renewal in 1991, the execution of the 1992 note represented a significant departure from the parties' prior relations. First, the loan application and promissory note were signed by Fisher alone. The Bank had previously required Duncan to co-sign the notes, as Fisher had been unable to qualify for the original 1990 note nor the first renewal on his own. This time, however, the Bank agreed to proceed with execution of a new promissory note with Fisher in the absence of Duncan's co-signing, though it later attempted to seek Duncan's signature on the note without success.

The language of the note itself indicates that it was Fisher, as the borrower, who was requesting that the 1991 note be renewed: "[y]ou[4] executed a promissory note payable to our order dated July 26, 1991 (Note) evidencing a loan (Loan) which Note is further described as Note number 12068 in the principal amount of $4,694.16. You have requested that the Note be renewed." Thus, the 1992 note was not an automatic renewal by the Bank in accord with the renewal clause contained in the original note, nor was it a continuation of the same note under the same terms and conditions as the Bank had previously claimed, but later conceded in its brief to this court.[5]

---

[4] The 1992 Consumer Loan Agreement provided that "as used herein, the pronouns "you" and "your" refer to Borrower and anyone who signs this form, individually and together . . . ."

[5] We do not reach the issue of the Bank's obligation in a consumer loan transaction where a co-signor expressly objects

Second, the terms of the 1992 note were substantially dissimilar to the prior loan documents. The modified document drafted by the Bank included a provision which stated as follows:

> You acknowledge that we are under no duty to preserve or protect any Collateral until we are in actual, or constructive possession of the Collateral. For purposes of this paragraph, we shall only be considered to be in 'actual' possession of the Collateral when we have physical, immediate, and exclusive control over the Collateral and have affirmatively accepted such control. We shall only be considered to be in 'constructive' possession of the Collateral when we have both the power and the intent to exercise control over the Collateral.

Furthermore, the Bank explicitly permitted Fisher to relocate the antique automobiles to San Juan, Texas, a provision to which Duncan strongly objected, given her expressed concerns about Fisher's intent to relocate the collateral in an undisclosed location. Duncan's prior willingness to co-sign the promissory note and first renewal had been predicated upon the readily accessible nature of the collateral, as it is undisputed that the value of the automobiles exceeded the amount of the note. By the Bank's own admission at trial, the extensive modification of the terms of the 1992 note would have required the signature of Duncan in order to enforce the note against her in a later proceeding. The Bank has, therefore, conceded that Duncan is not liable under the terms of the 1992 note.

---

to the Bank's attempt to indefinitely renew a promissory note in accord with a standard renewal clause, in the absence of the co-signor's consent.

Finally, and perhaps most convincing, is the payment history of the 1991 note contained within the record. Unlike the 1990 note which was designated as "paid by renewal," and exhibited an outstanding balance of $4,694.16, the Bank's records clearly demonstrate that a closing payment of $4,145.12 was made to account #12068, the 1991 note, on August 18, 1992. A figure of $0.00 (zero) is plainly noted in the balance column, as the account includes an opening date of June 26, 1991, and an August 18, 1992, date of last payment and closing. As Duncan correctly contends, the closing payment by the Bank in this case extinguished her previously underlying obligation on the 1991 note, as the Bank made a decision in the course of business to execute a new promissory note with Fisher in July 1992 which satisfied the debt.

We therefore conclude that the 1992 note, an agreement between the Bank and Fisher alone, represents the only agreement in existence at this time which evidences the current debt which is in default. Duncan was not made a party to this note, and therefore, its provisions cannot be enforced against her. The Bank initiated the instant proceedings against Duncan under the mistaken belief that she remained liable on the 1992 note, prior to its concession in this court to the contrary. The Bank was incorrect, and as such, no recovery may be had from Duncan.

Duncan has requested that attorney fees be awarded to her in this case. After a thorough examination of the record, we conclude that the Bank's conduct toward Duncan throughout the consumer loan transaction, though in error, did not rise to a level of

unconscionability under the Wisconsin Consumer Act.[6] An order of even date has been issued by this court directing the parties to submit memorandum briefs discussing the issue of whether attorney fees should be awarded to Duncan on other grounds.

*By the Court.*—The decision of the court of appeals is reversed.

[6] Justice Abrahamson, however, would conclude that the Bank engaged in a course of conduct toward Duncan that was unfair and therefore was unconscionable. Accordingly, Justice Abrahamson would hold that Duncan is entitled to attorney fees.