IN the INTEREST OF CHRISTOPHER D., a child under the age of 18:

RHONDA R.D., Petitioner-Respondent,

v.

FRANKLIN R.D., Respondent-Appellant.†

Court of Appeals

No. 94–3029. Submitted on briefs February 8, 1995.—Decided February 20, 1995.

(Also reported in 530 N.W.2d 34.)

†Petition to review denied.

681

683

685

For the respondent-appellant the cause was submitted on the briefs of *Jack E. Schairer* of the *Office of the State Public Defender,* Madison.

For the petitioner-respondent the cause was submitted on the brief of *Mary H. Behling* and *Martha Casper* of *Behling Law Office* of Cambridge and *Thomas R. Glowacki,* guardian ad litem, of *Hill, Glowacki, Jaeger & Reiley* of Madison.

For the State of Wisconsin an amicus curiae brief was submitted by *James E. Doyle,* attorney general, and *Donald P. Johns,* assistant attorney general.

Before Gartzke, P.J., Dykman and Vergeront, JJ.

VERGERONT, J. Franklin R.D. appeals from an order terminating his parental rights to Christopher D., and from an order denying his claim of ineffective assistance of counsel. Franklin claims: (1) The new procedure governing appeals in termination of parental rights (TPR) cases[1] is unconstitutional because the

---

[1] 1993 Wis. Act 395 created § 809.107, STATS., effective May 5, 1994, which provides in part:

> (1) APPLICABILITY. This section applies to the appeal of an order or judgment under s. 48.43 and supersedes all inconsistent provisions of this chapter.
>
> (2) INITIATING THE APPEAL. A person shall initiate an appeal under this section by filing, within the time specified in s. 808.04 (7m) [fifteen days after the judgment or order appealed from], a notice of intent to appeal with the clerk of the trial court in which the judgment or order appealed from was entered.
>
> . . . .
>
> (4) TRANSCRIPT. A person filing a notice of intent to appeal under sub. (2) shall order a transcript of the reporter's notes within 15 days after filing the notice. The court reporter shall file the transcript with the trial court and serve a copy of the transcript on

requirement that appeals be decided within forty-five days of the filing of the record on appeal violates the doctrine of separation of powers between the legislative and the judicial branches; (2) The new briefing deadlines violate the doctrine of separation of powers; (3) The requirement that a notice of appeal be filed within fifteen days of service of the transcript violates Franklin's rights to equal protection and due process under the United States and Wisconsin Constitutions; (4)

the person filing the notice of intent to appeal within 30 days after the ordering of the transcript.

(5) NOTICE OF APPEAL; TRANSMITTAL OF RECORD. Within 15 days after service of the transcript, the person filing a notice of intent to appeal under sub. (2) shall file a notice of appeal and docketing statement as provided in s. 809.10(1)(a) and serve a copy of the notice on the persons required to be served under sub. (2). The clerk of the trial court shall transmit the record to the court of appeals as soon as the record is prepared but in no event more than 15 days after the filing of the notice of appeal.

(6) SUBSEQUENT PROCEEDINGS IN COURT OF APPEALS; PETITION FOR REVIEW IN SUPREME COURT. Subsequent proceedings in the appeal are governed by the procedures for civil appeals and the procedures under subch. VI, except as follows:

(a) The appellant shall file a brief within 15 days after the filing of the record on appeal.

(b) The respondent shall file a brief within 10 days after the service of the appellant's brief.

(c) The appellant shall file within 10 days after the service of the respondent's brief a reply brief or statement that a reply brief will not be filed.

(d) If the guardian ad litem appointed under s. 48.235(1)(c) for the child who is the subject of the proceeding takes the position of the appellant, the guardian ad litem's brief shall be filed within 15 days after the filing of the record on appeal with the court of appeals. If the guardian ad litem takes the position of a respondent, the guardian ad litem's brief shall be filed within 10 days after service of the appellant's brief.

(e) Cases appealed under this section shall be given preference and shall be taken in an order that ensures that a decision is issued within 45 days after the filing of the record on appeal with the court of appeals.

Franklin's appearance by telephone, not in person, during the proceedings violated his due process and equal protection rights; (5) The trial court erred in its construction of § 48.415(1)(a)3, STATS., which sets forth a ground for abandonment;[2] (6) The trial court erred by failing to find he is an unfit parent for the foreseeable future before terminating his parental rights; (7) The trial court incorrectly denied his post-termination request for an *in camera* inspection of the Family Court Counseling Service file; and (8) Trial counsel was ineffective for failing to challenge the constitutionality of § 48.415(1)(c)[3] on grounds of vagueness. We reject his contentions and affirm the orders.

## BACKGROUND

Rhonda and Franklin were married in 1986 and are the parents of Christopher, born on July 5, 1987. The three lived together in the State of Washington until October 1987, when Rhonda moved to Wisconsin with Christopher. Rhonda initiated a divorce in Wisconsin in May 1988. Sole legal custody and primary physical placement were awarded to her. Franklin was allowed supervised visitation on thirty-days' notice, as determined by the guardian ad litem and the Family

[2] Section 48.415(1)(a)3, STATS., provides that abandonment may be established by a showing that:

> The child has been left by the parent with a relative or other person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of one year or longer.

[3] Section 48.415(1)(c), STATS., provides:

> A showing under par. (a) that abandonment has occurred may be rebutted by other evidence that the parent has not disassociated himself or herself from the child or relinquished responsibility for the child's care and well-being.

Court Counseling Service. Rhonda and Christopher continued to live in Wisconsin; Franklin continued to live in Washington.

In August 1993, Rhonda petitioned to terminate Franklin's parental rights. She alleged that Franklin had not seen Christopher since April 26, 1989, and had not tried to see him, save for one attempt in July of 1991; that Franklin had written Christopher two or three times in the past four years; and that Franklin was roughly $8,000 in arrears in child support payments and had told Rhonda he would never pay child support. She alleged abandonment under § 48.415(1)(a)3, STATS.

Franklin appeared by telephone at the plea hearing and stated that he was in the custody of the Department of Corrections in Washington but wanted to appear in person at the proceeding. Franklin was provided with appointed counsel and counsel moved for a writ of habeas corpus ad testificandum to produce Franklin from Washington for trial. The trial court denied the motion on the ground that it lacked authority to order Franklin released from incarceration, but left open the options of a voluntary plan to enable him to attend or participation by telephone.

Franklin moved to dismiss the petition on the grounds that because Rhonda had taken Christopher from Washington without his permission, Christopher had not been "left by [Franklin] with a relative or other person," as required by § 48.415(1)(a)3, STATS., and that the allegations were not sufficient to support a finding that Franklin failed to visit or communicate with Christopher for a period of one year or more. The trial court denied the motion, concluding that the phrase "left by the parent with a relative or other person"

includes letting a child continue in such a situation, and that the allegations in the petition were sufficient.

Defense counsel later informed the court that the Department of Corrections in Washington would release Franklin for trial upon the court's order. At the pretrial conference, defense counsel reported that the Wisconsin Public Defender's Office would not pay the approximately $4,000 in expenses for transporting Franklin to and from Wisconsin (which included the cost of two deputies). He asked that Rhonda be required to pay since Franklin was indigent. The court denied that request, finding that Rhonda had a net worth of "essentially zero" and was unable to pay. Defense counsel requested that the trial be delayed until Franklin was released from incarceration on April 15, 1995. The court concluded that it was likely that Franklin could participate in a meaningful manner by telephone. The issue of delaying the trial was not raised again by Franklin or his counsel.

The jury trial began on January 20, 1994. Franklin appeared by telephone and objected to appearing by telephone. Rhonda testified that Franklin visited Christopher two or three times in 1988 and 1989, but not after the divorce trial in April 1989. Rhonda testified that Franklin had not telephoned Christopher since April 1989. Before the TPR petition was filed, Franklin wrote numerous letters to Rhonda, some of which mentioned Christopher, and wrote some letters and cards to Christopher. Franklin was $8,800 in arrears in child support. Franklin testified that when he tried to visit Christopher in July 1991, he was arrested on a bench warrant and commitment order for failure to pay his child support arrearages and was unable to see Christopher. He also attempted to visit Christopher in February 1992. Franklin testified that

691

he had purchased a house and remodeled it with Christopher in mind. He intended to give the house to Christopher when he became a man, and had pictures of his son there. Franklin also testified that he made gifts to Christopher before April 1989, but not after. We need not review the testimony of the Family Court Counseling Service director and of Franklin's father.

The jury found that Franklin abandoned Christopher. At the dispositional hearing on August 5, 1994, the court found Franklin unfit, found that it was in the best interests of Christopher that Franklin's parental rights be terminated, and ordered termination of Franklin's parental rights. The order was entered on September 6, 1994, and on September 9, 1994, trial counsel filed a notice of intent to pursue post-judgment relief. A notice of appeal was filed by appellate counsel on November 11, 1994. Appellate counsel also filed motions in this court to remand for a hearing on ineffective assistance of trial counsel, for a three-judge panel to decide the appeal, and to enlarge the time to file a brief. On December 1, 1994, we granted the motion for a three-judge panel and the motion for remand. We retained jurisdiction and established a schedule for the hearing on remand and for filing the transcript and record with this court. We ordered that the briefing schedule established in § 809.107(6), STATS., would begin to run when the record was returned to this court. We denied the motion to enlarge as moot. On remand, the trial court determined that trial counsel's representation had not been ineffective.

## CONSTITUTIONALITY OF § 809.107(6), STATS.—
## SEPARATION OF POWERS

Before May 5, 1994, the procedure for appeals in felony cases governed TPR appeals. RULES 809.40(1)

and 809.30, STATS., 1991-92. The new procedure for TPR appeals shortens the deadlines in the appeal process. In addition to shortened time periods for the litigants, court reporters and clerks, § 809.107(6)(e), STATS., provides:

> Cases appealed under this section shall be given preference and shall be taken in an order that ensures that a decision is issued within 45 days after the filing of the record on appeal with the court of appeals.

No other provision in the rules of appellate procedure governing other cases, civil or criminal, limits the time for deciding an appeal.

Franklin argues that imposing a time limit to decide a TPR appeal is an intrusion into the judicial branch barred by the doctrine of separation of powers.[4] In *In re Complaint Against Grady*, 118 Wis. 2d 762, 348 N.W.2d 559 (1984), the supreme court held that "the setting of time limits for judicial decision-making concerns the efficient and effective functioning of the court system and, therefore, is a matter of court administration. . . . The legislature does not have the power to promulgate rules of court administration." *Id.* at 782, 348 N.W.2d at 569. The court declared unconstitutional a statute requiring the withholding of salary from judges who did not render decisions in their cases

---

[4] Our supreme court has described the doctrine of separation of powers in this way:

> The Wisconsin constitution creates three separate co-ordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another.

*State v. Holmes*, 106 Wis. 2d 31, 42, 315 N.W.2d 703, 709 (1982).

within a certain time period. *Id.* at 783, 348 N.W.2d at 569.

Notwithstanding § 809.107(6)(e), STATS., we may extend the time to issue a decision in a TPR case. RULE 809.82(2)(a), STATS., provides that "the [appellate] court upon its own motion or upon good cause shown by motion, may enlarge or reduce the time prescribed by these rules or court order for doing any act, or waive or permit an act to be done after the expiration of the prescribed time."[5] Under new § 808.04(7m), STATS., the fifteen days for filing a notice of intent to appeal in a TPR case may not be enlarged. But no provision in 1993 Wis. Act 395 makes RULE 809.82(2)(a) inapplicable to the forty-five-day period in § 809.107(6)(e). Our authority under RULE 809.82(2)(a) therefore applies to the time limit on our issuing TPR decisions. For this reason, we conclude that § 809.107(6)(e) is not an intrusion into the judicial branch barred by the doctrine of separation of powers.[6]

Franklin argues that the briefing deadlines in § 809.107(6)(a)-(d), STATS., are an unconstitutional intrusion into the judicial branch. Franklin's position

---

[5] RULE 809.82(2)(b), STATS., does not permit enlargements for filing a notice of appeal or cross-appeal from a final judgment or order, except for appeals under RULES 809.30 and 809.40(1), STATS.

[6] We exercised our authority to extend the time for issuing our decision in this case. On February 10, 1995, we issued an order on our own motion extending the time for issuing a decision from February 13, 1995 to February 20, 1995. Franklin's reply brief was filed February 8, 1995, five days before it was due. The extension was necessary to permit us to study the reply brief and give this appeal the careful consideration the litigants deserve.

is based on a statement in our order granting his request for a remand. We said "that § 809.107(6), STATS., does not permit us to extend briefing deadlines in these types of appeals." We erred. Nothing in the new law creates an exception to our general authority under RULE 809.82(2), STATS., to extend or waive time limits for briefs. For this reason, the briefing deadlines in § 809.107(6)(a)-(d) are not invalidated by the separation of powers doctrine.

## CONSTITUTIONALITY OF § 809.107(5), STATS.— DUE PROCESS AND EQUAL PROTECTION

Franklin claims that the requirement in § 809.107(5), STATS., that a notice of appeal be filed within fifteen days after service of the transcript is so short as to violate his right to effective assistance of counsel and to due process.[7] He also claims that his right to equal protection is violated because other types of cases have longer time limits for filing appeals, and because the indigent TPR litigant whose appointed counsel determines there is no merit to the appeal has 180 days from service of the transcript to file a "no merit" brief and notice of appeal under RULE 809.32(2), STATS.

Franklin's parental rights may not be terminated without procedural due process. *In re K.D.J.*, 163 Wis. 2d 90, 114, 470 N.W.2d 914, 924 (1991). The issue is whether the fifteen-day time limit for filing a notice of appeal after the transcript is filed is so short as to deny

---

[7] For purposes of this discussion, we assume, but do not decide, that we may not extend the time to file a notice of appeal under § 809.107(5), STATS.

Franklin a full and fair opportunity to be heard on appeal.[8] We conclude it is not.

Franklin's due process argument is based in part on the contention that the fifteen-day time limit for filing a notice of appeal denies him his right to effective assistance of counsel. In a criminal proceeding, if a convicted defendant elects to appeal, he or she retains the right to representation by competent counsel under the Sixth and Fourteenth Amendments. *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 435-36 (1988). While our supreme court has not decided whether effective assistance of counsel is a constitutional right in a TPR proceeding, it held in *In re M.D.(S).*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52, 55 (1992), that the statutory right of an indigent parent to court-appointed counsel in a TPR proceeding includes the right to effective assistance of counsel. Because we conclude the fifteen-day time limit does not interfere with effective assistance of appellate counsel, we need not decide whether a constitutional right exists to effective appellate counsel in a TPR case.

The notice of appeal must specify only the judgment appealed from, whether it is a type to be decided by one judge under § 752.31(2), STATS., and whether it is entitled to priority by statute. It need not specify the issues or errors relied upon. If appellate counsel was trial counsel, before the entry of judgment counsel should be familiar with the issues appropriate for appellate review. If appellate counsel was not trial counsel, receipt of the transcript will be the first opportunity appellate counsel has to become familiar with the case and to begin to analyze potential issues for

---

[8] For purposes of this discussion, we assume that Franklin's right to due process includes the right to appeal.

appeal. This could be a time-consuming task. We see no reason, however, why the task cannot be sufficiently accomplished within fifteen days to decide whether to file a notice of appeal. This is especially true if trial counsel and appellate counsel discuss the case with each other. As a general rule, the duties of both counsel to the client mean that they have a duty to discuss a potential appeal with each other, and we expect that this will be done.

After the notice of appeal is filed, appellate counsel will usually have thirty days before the brief is due (fifteen days for the transmittal of the record and fifteen days from that date to the date the brief is due). If this is not sufficient time within which to prepare a brief that fully presents and argues the issues in spite of counsel's diligent efforts, counsel may seek an extension from us. RULE 809.82(2)(a), STATS.

We reach the same conclusion on Franklin's due process right and for the same reasons. Given the minimal content requirements for a notice of appeal and the opportunity to request an extension of the time within which to file a brief, the fifteen-day requirement for filing a notice of appeal does not violate the right to due process prior to termination of parental rights.

Franklin argues that because the right to raise one's child is a fundamental right, we must require a compelling state interest in order to uphold the fifteen-day requirement. He cites *Shapiro v. Thompson*, 394 U.S. 618 (1969), *overruled in part by Edelman v. Jordan*, 415 U.S. 651 (1974), in which the United States Supreme Court invalidated statutes denying public assistance to persons who had not resided in a state for one year because it penalized the exercise of the fundamental right to travel. However, the fifteen-day time

limit for the notice of appeal does not deprive Franklin of his right to raise his child or penalize his exercise of that right. Therefore, the proper analysis is one of procedural due process—the procedure due Franklin prior to termination—rather than substantive due process—what the state must show to justify termination. *See In re K.D.J.*, 163 Wis. 2d at 115, 470 N.W.2d at 925 (statutory requirement of clear and convincing evidence of unfitness, plus necessity of termination for child's best interests, assure parent of substantive due process).

In analyzing Franklin's equal protection claim,[9] we again reject his premise that the fifteen-day time limit deprives him of a fundamental right. Therefore, we use the rational basis analysis. *See State v. McKenzie*, 151 Wis. 2d 775, 779, 446 N.W.2d 77, 78 (Ct. App. 1989). Under that analysis, equal protection of the law is denied if the legislature has made an irrational or arbitrary classification. *Id.* at 779, 446 N.W.2d at 78-79. A reviewing court examines whether any reasonable basis exists that justifies the classification. *Id.* The relevant classes for equal protection analysis here are: (1) TPR appellants—respondents, as well as petitioners and guardians ad litem, and (2) appellants in non-TPR cases.

We conclude that a rational basis exists for having a shorter time limit for filing a notice of appeal in TPR cases than in non-TPR cases. The legislature could rea-

---

[9] The equal protection guarantee under article I, section 1 of the Wisconsin Constitution and under the Fourteenth Amendment of the United States Constitution are substantially equivalent. *In re K.C.*, 142 Wis. 2d 906, 915, 420 N.W.2d 37, 40 (1988).

sonably conclude that when a termination of parental rights case is decided, the rights of the parents and the child are so significant that an expedited appeals process is desirable, both to restore parental rights and reunite the parent and child if the trial court has erred in ordering termination, and to allow a prompt adoption or other placement of the child if termination is proper. The legislature could reasonably conclude that these concerns justify a speedier appeals process than that provided in other types of cases.

■

Franklin also argues that he is denied equal protection because he must file a notice of appeal within fifteen days after service of the transcript, but appointed counsel for an indigent TPR litigant who determines there is no merit to an appeal under RULE 809.32, STATS., has 180 days from service of the transcript to file a no-merit brief and notice of appeal. Franklin assumes that RULE 809.32 applies to appeals under § 809.107, STATS. It does not.

RULE 809.32(1), STATS., refers to "attorney[s] appointed under s. 809.30 or ch. 977 [State Public Defender]." RULE 809.30, STATS., no longer applies in TPR cases. RULE 809.30(1)(a). Franklin's appellate counsel was appointed under ch. 977. Read in isolation, RULE 809.32(1) could be interpreted to apply in TPR appeals even though they are no longer governed by RULE 809.30. However, RULE 809.32(2) requires that the no-merit brief and notice of appeal "be filed within 180 days of the service upon the defendant of the transcript under s. 809.30(2)(g)." We conclude that RULE 809.32 applies only to cases governed by RULE 809.30.

Moreover, § 809.107(1), STATS., provides that "[t]his section applies to the appeal of an order or judgment under s. 48.43 [an order terminating parental

rights] and supersedes all inconsistent provisions of this chapter." Because RULE 809.32, STATS., is inconsistent with the shorter time limits in § 809.107, it does not apply to TPR appeals.[10]

## TELEPHONE PARTICIPATION—DUE PROCESS

 Franklin contends that he had a right to be physically present at the trial and that holding the trial without his physical presence violated his right to due process. The trial court's determination that Franklin could meaningfully participate by telephone is a constitutional fact. We review constitutional facts independently as conclusions of law. *State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827, 832 (1987). However, we do not set aside the historical facts found by the trial court unless they are clearly erroneous. Section 805.17(2), STATS.

The trial court conducted a number of experiments prior to trial to determine whether the telephone system allowed Franklin to hear persons on the witness stand, in the jury box, and at counsel table. Franklin complained he could not hear the speaker at all times, but a prison social worker with Franklin stated that he could hear clearly when the witness and counsel spoke into their microphones. The trial court found that Franklin could hear counsel, witnesses and the jury, that the jury could hear Franklin when he spoke, and

---

[10] Franklin does not discuss the constitutional implications, if any, of a conclusion that RULE 809.32, STATS., does not apply in TPR cases. We generally do not address issues not briefed. *See Waushara County v. Graf*, 166 Wis. 2d 442, 453, 480 N.W.2d 16, 20 (1992), *cert. denied*, 113 S. Ct. 269 (court of appeals has no duty to consider issues other than those presented to it).

that the system permitted Franklin to confer with his attorney both in the courtroom and privately in another room. At the beginning of jury selection, the beginning of the first and second days of trial, and at various other times throughout the proceedings, the trial court redetermined that Franklin was able to hear the proceedings. Franklin does not contend that these findings are clearly erroneous.

All exhibits were mailed to Franklin before trial. Franklin communicated with his attorney throughout the proceedings, including before the conclusion of direct examination of a witness and during breaks between direct and cross examination. He testified by telephone before the jury for several hours. The jury was provided with numerous pages of correspondence from Franklin to Rhonda, and heard witnesses testify both for and against Franklin.

The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The respondent in a TPR case has the right to "meaningfully participate" in the hearing. *In re A.A.L.*, 152 Wis. 2d 159, 167, 448 N.W.2d 239, 243 (Ct. App. 1989). In *In re A.A.L.*, we concluded that a trial court may order the petitioning parent to pay for the transportation of the respondent to the termination hearing; but we did not decide whether the respondent has a right to be physically present or whether there are alternatives to physical presence that afford meaningful participation. We decline to hold that meaningful participation always requires physical presence. Rather, we hold that whether a respondent in a TPR proceeding can mean-

701

ingfully participate without being physically present depends on the circumstances of each case.

The trial court found that Rhonda was unable to pay the cost of transporting Franklin. This finding is not clearly erroneous. Section 805.17(2), STATS. Franklin points to no evidence that this finding is clearly erroneous, except to argue that since she could afford experts and depositions, she could afford to pay at least some part of his travel.

Franklin argues that he could not meaningfully participate by telephone because it limited his ability to discuss tactics with his attorney, and he had to go off-line to have his father testify by telephone. The record shows, however, that he often consulted with his attorney. While he could not observe witnesses, he heard them (except for his father), and he could discuss their demeanor with his attorney between direct and cross examination.

Franklin contends that he could not listen when his father testified by telephone from Washington because there was only one phone line. When Franklin's counsel notified the court, only days before jury selection, that he wished to have Franklin's father testify by telephone, the court stated that there was only one phone line and that efforts should be made to depose his father. No deposition was taken. However, the court allowed his father to testify, over objections of petitioner and the guardian ad litem, after providing opposing counsel with the opportunity to question Franklin's father outside the presence of the jury about his identity and whether the testimony was relevant and admissible. Franklin conferred with his attorney after the *voir dire* of his father and before his father testified. We conclude these arrangements afforded

Franklin the opportunity to meaningfully participate in the proceedings.

Franklin contends that the trial court should have postponed the trial until he was released from custody in April 1995. That would have meant a fifteen-month delay in the trial. Since Franklin was able to participate meaningfully by telephone, we conclude due process did not require the delay.

## INTERPRETATION OF § 48.415(1)(a)3, STATS.

Franklin's claims that the trial court should have dismissed the petition and that it erroneously answered a jury question are both premised on his contention that the trial court incorrectly interpreted § 48.415(1)(a)3, STATS. According to Franklin, the phrase "[t]he child has been left by the parent with a relative or other person" refers only to the initial circumstance that separated the parent from the child and cannot apply to the parent's conduct once that separation has occurred for other reasons—in this instance, Rhonda's taking Christopher to Wisconsin and then being awarded sole custody.[11]

The interpretation of a statute is a question of law which we decide de novo, without deference to the trial court's determination. *State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 70, 508 N.W.2d 603, 605-06 (1993). We first look to the language and if it is unambiguous, our inquiry ends. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57, 61 (1993). A statute is ambiguous if reasonably well-informed persons may differ as to its meaning. *Id.* If

---

[11] The term "relative" is defined under § 48.02(15), STATS., to include a parent.

the language is ambiguous, we examine the scope, history, context, subject matter and the object of the statute in order to ascertain the intent of the legislature. *Id.* at 202, 496 N.W.2d at 61.

"Left" is not defined in ch. 48, STATS. We therefore construe the word according to its ordinary and accepted meaning, and we may consult a dictionary for that purpose. *State v. Gilbert*, 115 Wis. 2d 371, 377-78, 340 N.W.2d 511, 515 (1983). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) lists the following definitions of "leave":

> **1 b** (3): to cause to be or remain in some specified condition . . .
>
> **2 a** (1): to permit to remain undisturbed or in the same position . . . .

Based on the dictionary definitions, we conclude that the phrase "left by the parent with a relative or other person" is ambiguous. It could mean the child is allowed to remain with the relative or other person by the parent, or it could mean the child is placed there by the parent. Under the first interpretation, the focus is not on the initial placing of the child, but on the parent's conduct of allowing the child to remain. Under the second interpretation, the focus is on the initial placing of the child.

Since the language of § 48.415(1)(a)3, STATS., is ambiguous, we look to its context and purpose to determine the intent of the legislature. Section 48.415 lists eight separate grounds for termination of parental rights, one of which is abandonment.[12] There are two

[12] The others are: continuing need of protection or services, continuing parental disability, continuing denial of periods of physical placement, child abuse, failure to assume parental

statutory bases for establishing abandonment under § 48.415(1)(a) besides that listed in subd. 3. Subdivisions 2 and 3 provide:

> 1. The child has been left without provision for its care or support . . . and for 60 days the petitioner has been unable to find either parent;
> 2. The child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) and the parent has failed to visit or communicate with the child for a period of 6 months or longer.

"Incidental contact" does not preclude a finding that the parent has failed to visit or communicate with the child. Section 48.415(1)(b). But a showing of abandonment on any of the three grounds "may be rebutted by other evidence that the parent has not disassociated himself or herself from the child or relinquished responsibility for the child's care and well-being." Section 48.415(1)(c).

Throughout the subsection on abandonment, the focus is on the parent's contact, or lack of contact, with the child. The purpose of the subsection is to permit a finding of abandonment where there has been incidental or no contact for specified periods of time, in the absence of certain rebuttal evidence. It is inconsistent with this purpose to interpret § 48.415(1)(a)3, STATS., to depend only on whether the parent initially placed the child with another person rather than on the parent's conduct once the child is with that person. This interpretation would mean a parent could never be found to have abandoned a child simply because the parent did not actively place the child with another person, even if

responsibility, incestuous parenthood, and intentional homicide of parent. Section 48.415(2)-(8), STATS.

the parent knew where the child was and never again had contact with the child.

It is more in keeping with the purpose of § 48.415(1)(a), STATS., to interpret subd. 3 to apply both to those situations where the parent actively places the child with another person and to those situations where the parent does not do so, but "knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of one year or longer." The trial court correctly applied this interpretation of subd. 3 in deciding that the petition alleged an evidentiary basis for abandonment.

The trial court also correctly answered the jury's question on the meaning of "left with." During deliberations, the jury posed this question to the court:

> Question to the Court: What is the legal definition of the phrase 'left with' another person? Does that include all or some of the following:
> 1. Intentionally putting the child in someone's care without that person's consent?
> 2. Doing the same with that person's consent?
> 3. Leaving the child in that person's care as a result of that person's action without knowledge and/or without consent, or by court order?

After consulting several dictionaries and discussing the various definitions with the attorneys,[13] the court answered the question as follows: "the phrase 'left with' another person includes, but is not limited to, a situation where a child remains with a relative or

---

[13] The guardian ad litem and Rhonda's counsel have stipulated that the objection of Franklin's trial counsel was sufficient.

other person as a result of a court order." This definition is consistent with our construction of "left with."

Franklin argues that the court's answer means that a parent can be found to have abandoned a child simply because the other parent gets custody in a divorce action. That is not the case. In addition to having "left" a child with another person, the respondent parent must know where the child is and have failed to visit or communicate with the child for one year or more. That time period "shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child." Section 48.415(1)(b), STATS. Under the construction of subd. 3 that we adopt, and which was correctly applied by the trial court in answering the jury's question, a parent does not abandon a child simply because the child lives with the other parent, pursuant to a custody order or otherwise. The focus, rather, is on the respondent parent's conduct once the child is living with the other parent.

## UNFITNESS FOR REASONABLY FORESEE-ABLE FUTURE

Based on the jury's finding that Franklin had abandoned Christopher, the trial court found that Franklin was unfit. Section 48.424(4), STATS., provides in part:

> If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit. A finding of unfitness shall not preclude a dismissal of a petition under s. 48.427(2) [permitting dismissal if the court finds the evidence does not warrant the termination of parental rights]. The court shall then proceed

immediately to hear evidence and motions related to the dispositions enumerated in s. 48.427.

In deciding the appropriate disposition, "[t]he best interests of the child shall be the prevailing factor." Section 48.426(2), STATS. The trial court reviewed the non-exclusive list of best interest factors contained in § 48.426(3), made findings with respect to these and other factors relevant to Christopher's best interests, and concluded it was in his best interests to terminate Franklin's parental rights.

Franklin argues that before ordering termination, the trial court was required to find that he would be unfit for the reasonably foreseeable future. But neither § 48.424(4), STATS., nor any other applicable statute, requires that. The finding of unfitness by the court is automatic and required after a jury has found that a ground for termination exists. *In re K.D.J.*, 163 Wis. 2d at 109, 470 N.W.2d at 922.

In *In re K.D.J.*, on which Franklin relies, the TPR petition was filed under § 48.415(2)(c), STATS. Termination under § 48.415(2)(c) requires a showing "that the parent has failed to demonstrate substantial progress toward meeting the conditions established for the return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 12-month period following the fact-finding hearing under s. 48.424." Because the future conduct of the parent was an express statutory condition for that ground of termination, the special verdict asked a question on that point; and at the disposition hearing the trial court discussed the parent's prospects for improvement, concluding there were none. *In re K.D.J.*, 163 Wis. 2d at 106, 470 N.W.2d at 921. *In re K.D.J.* does not support the proposition that

there must be a finding of future unfitness before terminating parental rights when the petition alleges another statutory ground for termination, such as abandonment, which contains no such requirement.

## *IN CAMERA* ACCESS TO FAMILY COURT COUNSELING SERVICE FILE

 Franklin contends that the trial court erred in refusing to order an *in camera* inspection of the Family Court Counseling Service file from Franklin and Rhonda's divorce. We conclude the trial court did not err. Franklin did not make the showing required to entitle him to that review.

After the entry of the order and before the hearing on remand, Franklin's appellate counsel requested an *in camera* inspection of the file. At the hearing on remand, appellate counsel explained that he wanted to review the confidential file to determine whether it contained exculpatory evidence and, if so, whether trial counsel was ineffective for not requesting it. Trial counsel testified at the hearing on remand that since the Family Court Counseling Service director was cooperative during his informal discussions with her and in his deposition of her, and since he had a "pretty good picture of what was in the file," he decided his time was best spent on other avenues of discovery. At the conclusion of the testimony on remand, appellate counsel did not argue that trial counsel had been ineffective for failing to request the Family Court Counseling Service file.

The trial court denied the motion for an *in camera* inspection of the file because it could find no reason for an inspection after trial and during the appeal. In reaching this conclusion, the court noted trial counsel's

testimony on his reasons for not trying to obtain review of the file, the fact that appellate counsel was not pursuing this as a basis for ineffective assistance of counsel, and the lack of factual disputes concerning Franklin's contacts with Christopher, making it unlikely that the file would disclose relevant facts.

In *In re K.K.C.*, 143 Wis. 2d 508, 422 N.W.2d 142 (Ct. App. 1988), we held that a criminal defendant is entitled to an *in camera* review of confidential juvenile records provided the defendant first makes a preliminary showing that the records contain evidence material to the defense. *Id.* at 511, 422 N.W.2d at 144. Assuming, without deciding, that our *In re K.K.C.* ruling applies in a TPR proceeding and at the post-trial as well as the pre-trial stage, we conclude that Franklin has not made the required preliminary showing. Franklin's defense depended primarily on convincing the jury that the facts, largely undisputed, did not constitute abandonment under the statute. Franklin has made no showing that the file contained evidence material to his defense, other than to say it might contain exculpatory evidence. This is insufficient to entitle him to an *in camera* inspection.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■

Whether trial counsel provided ineffective assistance is a mixed question of law and fact. *State v. Johnson*, 133 Wis. 2d 207, 216, 395 N.W.2d 176, 181 (1986). The trial court's determinations of what the attorney did and did not do, and the basis for the challenged conduct, are factual and will be upheld unless clearly erroneous. *Id.* Whether the attorney's conduct constituted ineffective assistance is a question of law, which we decide de novo. *Id.* To prevail on this claim,

Franklin must show that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense. *See In re M.D.(S).*, 168 Wis. 2d at 1005, 485 N.W.2d at 55.

Franklin's claim of ineffective assistance of counsel is based on his contention that the word "disassociated" in § 48.415(1)(c), STATS., is unconstitutionally vague. Since trial counsel did not challenge the statute on this ground, Franklin argues, his right to effective assistance of counsel was violated.

The constitutionality of a statute is a question of law that we review de novo, without deference to the trial court's determination. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). Unless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid. *Richland Sch. Dist. v. DILHR*, 174 Wis. 2d 878, 905, 498 N.W.2d 826, 836 (1993). A fair degree of definiteness is all that is required. *State v. Ehlenfeldt*, 94 Wis. 2d 347, 355, 288 N.W.2d 786, 790 (1980). A statute may be considered to have a sufficiently definite meaning when it uses nontechnical words and phrases. *Id.* at 356, 288 N.W.2d at 790.

Franklin argues that the meaning of "disassociated" is not apparent from the context and that it could mean "a failure to visit or communicate." According to Franklin, this would be an absurd result since a failure to visit or communicate with a child for one year or longer is part of the showing of abandonment under § 48.415(1)(a)3, STATS. Franklin states that "disassociate" is defined in THE AMERICAN HERITAGE COLLEGE DICTIONARY (2d ed. 1982) as "dissociate," which means: "[t]o remove from association; separate." This defini-

tion provides a fair degree of definiteness and is sufficient to determine legislative intent with reasonable certainty.

Read in conjunction with § 48.415(1)(a), STATS., it is clear that "disassociated" means more than a failure to visit or communicate with a child. A parent could have failed to visit or communicate with a child for more than one year after leaving the child with another person and still not have disassociated himself or herself from the child. For example, the parent could have attempted to visit or communicate, but been prevented. The parent could have sent presents. The parent could have communicated with the caretaker of the child about the child's health and development. Such evidence could show that the parent had not disassociated, or separated, himself or herself from the child, in spite of not having visited or communicated with the child for one year or more. "Disassociated" in this statute is not unconstitutionally vague. It follows that trial counsel's performance was not deficient in failing to challenge the statute on that basis. Nor was his performance deficient for failing to ask that a definition be provided the jury. Trial counsel testified at the hearing on remand that he decided not to ask for a definition because he wanted to be able to argue that Franklin had not disassociated himself, no matter how minimal the evidence was; he suspected that if the issue was brought up, the judge would decide on a definition that was more beneficial to Rhonda than to Franklin. The trial court found this to be a strategic decision. We conclude trial counsel's conduct "falls within the wide range of reasonable professional assistance" and was therefore not deficient. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984).

*By the Court.*—Orders affirmed.

DYKMAN, J. (*dissenting*). I dissent from the majority opinion because I am unable to agree with its application of § 48.415(1)(a)3, STATS.[1] That statute reads:

> Abandonment may be established by a showing that:
>
> . . . .
>
> 3. The child has been left by the parent with a relative or other person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of one year or longer.

The first step in statutory interpretation is to look at the language of the statute, because if that language is clear, we go no further. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57, 61 (1993). It is at this point that I part company with the majority. I conclude that the phrase, "[t]he child has been left by the parent with a relative or other person" is unambiguous. It requires that the parent leave the child with a relative or another person. Section 48.415(1)(a)3, STATS., does not apply to Franklin. He did not leave Christopher with anyone. Christopher's mother took Christopher from Franklin. It is therefore improper to use a dictionary to determine what the statute means. What the majority has done is to impute an ambiguity in § 48.415(1)(a)3, by using a dictionary definition of the word "left."

---

[1] Because I conclude that this case should be reversed because of the trial court's erroneous interpretation of § 48.415 (1)(a)3, STATS., I do not reach the other issues discussed in the majority opinion.

The majority does not conclude that § 48.415(1)(a)3, STATS., is ambiguous. Instead, it holds that the word "left" is ambiguous. That is not the test. Were that the test, few, if any, statutes would be clear. For instance, "left" also indicates a direction, i.e., the opposite of "right." Yet, the majority does not conclude that "left" is ambiguous because the word "left" may also mean the opposite of "right." A word is but a part of a statute. When we examine a statute in its entirety, a word within the statute which alone is ambiguous can and usually does lose its ambiguity. Professor James Willard Hurst writes:

> Words do not have meaning in the abstract. They have meaning with reference only to some subject which those choosing the words mean to address. We cannot answer the question, what is the ordinary meaning of the word "ring" without asking a prior question: Is the speaker talking about a signal from a telephone, an ornament to slip on a finger, an arena under a circus tent? Often the difficult problem is to identify the subject the legislature intends to deal with; if we know that, then the ordinary meaning of the words, used with reference to that subject, is likely to present no serious issue.

JAMES WILLARD HURST, DEALING WITH STATUTES 58-59 (1982).

In the context of a statute dealing with the termination of parental rights because of parental abandonment, the phrase "[t]he child has been left by the parent with a relative or other person" has but one meaning, and that meaning does not permit the statute to be applied to the facts of this case.

The majority's view of this statute means that abandonment may be found under § 48.415(1)(a)3, STATS., every time the parent has little or no contact

with a child. However, this reading ignores the words "by the parent" and "with a relative or other person." Under the majority's view, the fact that the parent is not the party responsible for placing a child with another person is irrelevant. The majority does not believe that § 48.415(1)(a)3 addresses the cause of why the child and parent are separated, but only looks at what has happened after the fact of separation. But the statute does not read only "the child has been left," it reads, "the child has been left by the parent with a relative or other person." When these words are read together, I conclude that they mean that the parent has instigated the separation by placing a child with someone else and, later, has made little or no attempt to further contact the child.

A "cardinal rule of statutory construction" is to interpret statutes so as to give meaning to all of the words. *IBM Credit Corp. v. Village of Allouez*, 188 Wis. 2d 143, 153, 524 N.W.2d 132, 135 (1994). If one is to accept the majority's interpretation of § 48.415(1)(a)3, STATS., which makes the phrase "by the parent with a relative or other person" surplusage, its inclusion must be attributed to legislative oversight. But I do not believe that phrase appears by happenstance. Section 48.415(1)(a)3 is the third method the legislature provided for establishing parental abandonment. The first method is found in § 48.415(1)(a)1. That statute reads:

> Abandonment may be established by a showing that:
> 1. The child has been left without provision for its care or support, the petitioner has investigated the circumstances surrounding the matter and for 60 days the petitioner has been unable to find either parent.

The legislature included the phrase "by the parent" in § 48.415(1)(a)3 after the words "[t]he child has been left," but omitted the phrase in § 48.415(1)(a)1. If a word or words are used in one statute but are not used in a similar statute, we must conclude that the legislature specifically intended the words to have meaning. *See Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 388, 480 N.W.2d 1, 6 (1992) (the omission of a word or words in the revision of a statute indicates an intent to alter its meaning). I do not think it likely that "by the parent," a phrase not used in § 48.415(1)(a)1, but included in § 48.415(1)(a)3, was accidental. It was intended to have meaning, a meaning the majority has removed from the statute.

My conclusion is unchanged were I to accept the majority's holding that the word "left" in § 48.415(1)(a)3, STATS., renders the statute ambiguous. The legislative history of the statute suggests to me that the legislature intended a narrow interpretation of the word "abandonment."

In 1979, State Representative Stephen Leopold asked John Franz, a staff attorney and policy specialist with the Youth Policy and Law Center, Inc., to draft revisions to the statutes regulating the termination of parental rights. Franz did so, and sent an extensive draft to Representative Leopold and to a Legislative Reference Bureau bill drafter, Kathleen Curran. That draft became 1979 A.B. 656, and ultimately Laws of 1979, ch. 330, § 6.[2] A letter accompanying the draft

---

[2] Legislation similar to 1979 A.B. 656 was introduced in the Senate as 1979 S.B. 479. Representative Leopold cosponsored the Senate version. The relevant phrase, "[t]he child has been left by the parent with a relative or other person" was used in both 1979 A.B. 656 and 1979 S.B. 479, although at one stage, the Senate version used the phrase "[t]he child *was* left by the

asks Curran to consider *In re Kegel*, 85 Wis. 2d 574, 271 N.W.2d 114 (1978), especially Justice Abrahamson's dissent in that case. It also contains a note: "See Family Law Quarterly Fall 1978 Volume 12, Number 3—Model Act on Subject."[3]

The draft revision by Franz is in the form of a memorandum dated December 21, 1978, addressed to Representative Leopold. It is remarkably similar to the present statute. Section 48.41 of the draft is entitled "~~Jurisdiction~~ Grounds for Termination of Parental Rights." The second ground for termination is "abandonment," and reads:

> (2) Abandonment. A presumption of abandonment which may be rebutted by competent evidence presented at a hearing under s. 48.417 shall be established by a showing that:
>
> . . . .
>
> (c) The child has been left by the parent with a relative or other person for care, and the parent for a period of one year failed to visit or communicate with the child~~, and despite due diligence by the agency seeking termination, the parent has not been found~~.

The draft shows that the phrase "and despite due diligence by the agency seeking termination, the parent has not been found" has been stricken. But the phrase that is at issue in the case before us, "[t]he child has been left by the parent with a relative or other person," was included in § 48.415(1)(a)3, STATS., from the beginning.

---

parent . . . ." (Emphasis added.) Section 48.415(1)(a)3, STATS., was created by 1979 A.B. 656. Laws of 1979, ch. 330, § 6.

[3] All legislation, whether drafted by the Legislative Reference Bureau or not, must be reviewed by the bureau. Section 13.92(1)(b)1, STATS.

Justice Abrahamson's dissent in *Kegel* took issue with the majority's conclusion that termination of a mother's parental rights was in the best interests of the children. *Kegel*, 85 Wis. 2d at 589, 271 N.W.2d at 121. She did so in part because the majority placed unquestioning reliance on the continuity of the psychological parent-child relationship theory. *Id.* at 587, 271 N.W.2d at 120. Justice Abrahamson noted that this theory was the subject of great controversy. She concluded: "The power to terminate parental rights, the power to sever permanently the legal ties between parent and child, is an awesome governmental power. Such power should be exercised with restraint." *Id.* at 589, 271 N.W.2d at 121.

Section 2(a)(4)(iv) of the Model Act to Free Children for Permanent Placement with Commentary, noted on Franz's memo dated January 3, 1979, provides:

> [A]bandonment is conclusively presumed if the child is found under such circumstances that the identity or whereabouts of the parent is unknown and has not been ascertained by diligent searching and the parent does not claim the child within 2 months after the child is found . . . .

Sanford N. Katz, *Freeing Children for Permanent Placement Through a Model Act*, 12 FAM. L.Q. 203, 209 (1978). The commentary to this section notes:

> The Model Act's definition of "abandonment" [(a)(4)(iv)] is a narrow one which addresses the situation of a "foundling" left without any clue to the identity of the parent and under circumstances that indicate a complete abdication of all parental responsibility for the child.

*Id.* at 213.

By memo dated March 29, 1979, addressed to Representative Leopold, Senator Lynn Adelman and Curran, Franz notes:

> As was requested at our meeting on March 27th this is an attempt to present a commentary to the sections of the TPR draft bill as they are currently formulated. In the commentary I will try to explain what the section is intended to accomplish, issues that it raises, and changes from current statute.

Under the subheading "Abandonment," Franz's memo reads: "The one year abandonment is intended to cover those children for whom parents make some provision for care *by leaving them with relatives or friends* but who subsequently are not visited or cared for by their parents." (Emphasis added.) Franz's discussion of the three "types of abandonment" tracks exactly the three ways of establishing abandonment in § 48.415(1)(a), STATS. The "one year abandonment" noted in Franz's memo is § 48.415(1)(a)3, the section used to terminate Franklin's parental rights.

A policy memo from the Youth Policy and Law Center dated April 2, 1979, notes:

> Abandonment is not as clear cut a concept as the word indicates. One way of defining it more clearly is to establish time limits for a rebuttable presumption of abandonment depending on the circumstances in which the parent leaves the child. If the parent disappears without making any provision for the care of the child, the time limit should be short, perhaps 30 days. *If the parent leaves the child with a relative or a friend* and there is some degree of responsibility expressed, a greater inquiry and longer time limits should be required.

(Emphasis added.)

719

Had the legislature adopted a variant of the parental rights statute known as the Plum-Nelson suggestions, I would agree with the majority.[4] That version of § 48.415(1)(a)3, STATS., had it been adopted, would have read:

> (c) The child is in the care of a relative or other person, the child is not [the] subject of a dispositional order under 48.355, the parent knows or could discover the whereabouts of the child, and the parent for a period of ~~two years~~[5] failed to visit or communicate with the child.

But the legislature did not choose the Plum-Nelson version of what must be shown to prove "abandonment." Instead, it chose the more narrow definition of "abandonment" suggested by the Model Act.

I believe that the majority has assumed that all children whose parents have had little contact with them should fall within one of the categories chosen by the legislature permitting termination of parental rights. This is a dangerous assumption. The majority writes: "The purpose of the subsection is to permit a finding of abandonment where there has been incidental or no contact for specified periods of time, in the absence of certain rebuttal evidence." Majority op. at 706.

This is the majority's view of what our termination of parental rights legislation was intended to cover. But, as the dissent in *Kegel* notes, and the commentary to the Model Act explains, there is another side to a

---

[4] A Wisconsin Legislative Council Staff Memorandum dated January 17, 1980, identifies Pat Nelson of LAW, INC., and Henry Plum with the Milwaukee County Children's Court.

[5] The words "one year" were handwritten above the stricken words "two years."

termination dispute. A parent has a fundamental liberty interest in raising his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Not only must government bear a heavy burden before it can overcome that right, but opinions continue to vary as to the value of terminating parental rights even when a parent does not conform well to community values. Expert opinion varies as to whether a parent with poor parenting skills is better or worse than an adoptive parent or no parent at all. I do not believe that judges can identify the correct answer to this question. The best we can do is to discover the solution adopted by the legislature and accept that as the proper answer to a difficult question.

I have examined the words, phrases and sentences adopted by the legislature, and I have viewed the legislative history of 1979 A.B. 656 and 1979 S.B. 479 that now remains. The legislature was entitled to and did hold a very different view of "abandonment" than the view now held by the majority. I conclude that the legislature intended a limited view of what "abandonment" means in a termination of parental rights context. Under that view, "abandonment" pursuant to § 48.415(1)(a)3, STATS., is proven by showing specific action on the part of a parent. That view necessarily requires a conclusion that Franklin's action or inaction, whether we approve of it or not, does *not* constitute a § 48.415(1)(a)3 abandonment. The legislature *did* enact what the majority decries: A statute which means that a parent cannot be found to have abandoned a child unless the parent actively places the child with another person. Because I would not inter-

fere with the legislature's determination, I cannot join in the majority's opinion.