# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. 2025AP633
2025AP634
2025AP635
2025AP636
STATE OF WISCONSIN

Cir. Ct. Nos. 2024TP2
2024TP3
2024TP4
2024TP5

IN COURT OF APPEALS
DISTRICT III

NO. 2025AP633

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. B., A PERSON UNDER THE AGE OF 18:

TAYLOR COUNTY HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A. B.,

    RESPONDENT-APPELLANT.

NO. 2025AP634

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S. B., A PERSON UNDER THE AGE OF 18:

TAYLOR COUNTY HUMAN SERVICES,

**PETITIONER-RESPONDENT,**

V.

**A. B.,**

**RESPONDENT-APPELLANT.**

---

**NO. 2025AP635**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO T. B., A PERSON UNDER THE AGE OF 18:**

**TAYLOR COUNTY HUMAN SERVICES,**

**PETITIONER-RESPONDENT,**

V.

**A. B.,**

**RESPONDENT-APPELLANT.**

---

**NO. 2025AP636**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO D. B., A PERSON UNDER THE AGE OF 18:**

**TAYLOR COUNTY HUMAN SERVICES,**

**PETITIONER-RESPONDENT,**

V.

**A. B.,**

**RESPONDENT-APPELLANT.**

---

2

APPEALS from orders of the circuit court for Taylor County: ANN N. KNOX-BAUER, Judge. *Affirmed*.

¶1      HRUZ, J.[1]   In these consolidated cases, Adam appeals circuit court orders terminating his parental rights to four of his children: Alice, Sharon, Theo, and Daryl ("the children").[2]   Adam argues that Taylor County failed to prove either of its asserted grounds for involuntary termination of parental rights (TPR). We disagree and affirm the orders.

## BACKGROUND

¶2      In January 2024, the County filed petitions to terminate Adam's parental rights to Alice, Sharon, Theo and Daryl, alleging that grounds for TPR existed for each of the children under WIS. STAT. § 48.415(2)(a)—continuing need of protection or services—and (6)(a)—failure to assume parental responsibility.  A

---

[1]   These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."   RULE 809.107(6)(e).   Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).   Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading in these confidential matters, we refer to the appellant using a pseudonym rather than his initials, and we do the same for the children and the children's mother. The mother's parental rights are not at issue in these appeals.  We discuss her only to the extent necessary to decide Adam's appeals.

3

four-day jury trial was held during the grounds portion of the TPR process.[3]  The jury returned verdicts that both grounds existed to terminate Adam's parental rights as to each of the children.  We discuss the trial in further detail below.

¶3      After a dispositional hearing, the circuit court found that termination of Adam's parental rights was in the best interests of each of the children, and the court entered orders terminating Adam's parental rights to each of the children.  Adam now appeals.

## DISCUSSION

¶4      Adam argues that the County failed to meet its burden to prove either of the alleged TPR grounds at the jury trial by clear and convincing evidence.  We conclude that the County presented sufficient evidence to prove that Adam failed to assume parental responsibility for each of the children.  Accordingly, we need not address Adam's argument regarding the sufficiency of the evidence that the children were in continuing need of protection or services.  *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (noting that we need not address all issues when the resolution of one of those issues is dispositive).

---

[3] A contested proceeding for the termination of parental rights involves a two-step procedure.  ***Sheboygan Cnty. DHHS v. Julie A.B.***, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402.  The first step is a factfinding hearing, in which a jury or circuit court determines "whether any grounds for the termination of parental rights have been" proved.  ***Id.***, ¶26 (quoting WIS. STAT. § 48.424(3)).  The termination proceedings then move to the second step, a dispositional hearing, at which the circuit court must consider the best interests of the child.  WIS. STAT. § 48.426(2).

¶5    "Our review of a jury's verdict is narrow." ***Morden v. Continental AG***, 2000 WI 51, ¶38, 235 Wis. 2d 325, 611 N.W.2d 659. We "will sustain a jury verdict if there is any credible evidence to support it. Moreover, if there is any credible evidence, under any reasonable view, that leads to an inference supporting the jury's finding, we will not overturn that finding." ***Id.*** (citations omitted). In applying this standard,

> this court considers the evidence in a light most favorable to the jury's determination. We do so because it is the role of the jury, not an appellate court, to balance the credibility of witnesses and the weight given to the testimony of those witnesses. To that end, appellate courts search the record for credible evidence that sustains the jury's verdict, not for evidence to support a verdict that the jury could have reached but did not. If we find that there is "any credible evidence in the record on which the jury could have based its decision," we will affirm that verdict. Similarly, if the evidence gives rise to more than one reasonable inference, we accept the particular inference reached by the jury.

***Id.***, ¶39 (citations omitted).

¶6    The County alleged, and the jury found, that Adam failed to assume parental responsibility for each of the children. The TPR ground of failure to assume parental responsibility is "established by proving that the parent or the person or persons who may be the parent of the child have not had a substantial parental relationship with the child." WIS. STAT. § 48.415(6)(a). WISCONSIN STAT. § 48.415(6)(b) explains that "substantial parental relationship" means

> the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to, whether the person has expressed concern for or interest in the support, care or well-being of the child, whether the person has neglected or refused to provide care or support

5

for the child and whether, with respect to a person who is or may be the father of the child, the person has expressed concern for or interest in the support, care or well-being of the mother during her pregnancy.

¶7    The evidence presented at trial that Adam failed to assume parental responsibility for each of the children includes the following. Julie Clarkson testified that she worked with Adam in her role as a supervisor for the County. She stated that the County first became involved with Adam in 2021 after multiple incidents in which the County received calls that two of Adam's children were wandering in the streets unsupervised.[4] Clarkson stated that the County removed the children from the home in 2022, after Adam and the children's mother, Susan, separated and the County received reports that Susan had not been home in several days and that Adam was incarcerated.

¶8    Tracy Tallier, a probation and parole agent, testified that she supervised Adam in 2022 and that, during that time, Adam was under the "maximum level of supervision" for crimes of possession of THC with intent to distribute and battery. Tallier further stated that, during supervision, Adam violated his rules of supervision by operating a motor vehicle without a valid driver's license; engaging in a high-speed chase with law enforcement; having contact with a "victim of some pending charges"; and taking an entire bottle of prescription medication at one time, not as prescribed. As a result of these violations, Tallier recommended a full revocation of his supervision, and Adam was sent to prison.

---

[4] A case worker later clarified that one child was three years old and the other child was six years old at that time.

6

¶9 Emily Hannemann, an ongoing case worker for the County, testified that she worked with Adam in March 2022 to meet the conditions of the children's return. During that time, Adam had just been released from jail and did not have a stable residence. Hannemann further stated that her primary concern regarding Adam was his lack of availability to his children due to his incarceration, his criminal behavior, and his alcohol and drug use. After his release in March 2022, Adam was returned to custody from May 2022 until September 2022, and he was then returned to custody again in November 2022.

¶10 Alice and Sharon's foster mother testified that Alice and Sharon were placed in her home in March 2022 and that Alice and Sharon have continuously resided with her since then. The foster mother stated that she has been making doctor's appointments for Alice and Sharon since March 2022, that she is involved in Alice's and Sharon's schooling, and that she had never seen Adam at any parent-teacher conferences.

¶11 Theo and Daryl's foster mother testified that Theo and Daryl were placed in her home in March 2022 and that Theo and Daryl have continuously resided with her since then. The foster mother stated that she is involved in Theo's and Daryl's schooling and that Adam has never attended either Theo's or Daryl's parent-teacher conferences or IEP meetings.

¶12 Samantha Jerome, a case worker for the County, testified that she worked with Adam and that Adam "was doing the best he could" regarding assuming parental responsibility for the children while incarcerated. She explained, however, that "he wasn't able to assume full parental responsibility in prison" because of his "unavailability." Jerome also noted that Adam called her to

ask about the children "[m]aybe once," that he called the foster families for updates on the children "one or two" times, and that he did not ever call the children's school to check on the children's education.[5]

¶13    Adam testified that he was incarcerated at the time of trial and that this incarceration period began in November 2022.

¶14    On appeal, Adam points to evidence at trial that he characterizes as showing that he did assume parental responsibility for his children, including his love for his children, that he was the children's principal caregiver and support up until he was incarcerated, and the sacrifices that he made for his children.[6]  In so arguing, Adam essentially asks us to reweigh the evidence presented to the jury, which we lack the authority to do.  *See **Morden***, 235 Wis. 2d 325, ¶38.

¶15    "[I]t is the role of the jury, not an appellate court, to balance the credibility of witnesses and the weight given to the testimony of those witnesses." *Id.*, ¶39.  That Adam presented countervailing evidence or that there was evidence to support the inference that Adam assumed parental responsibility for the children

---

[5] We note that Adam testified that he was only allowed two free phone calls per week, both of which he consistently used to speak to his children, and that he only received three dollars every two weeks for disposable income after child support and hygienic necessities were deducted from his paycheck.

[6] Indeed, a review of the trial transcripts shows that evidence was presented at trial that Adam attended the children's medical appointments when he was able to, that he sought services to treat his alcohol use when not incarcerated, that he had visitations with the children while incarcerated and both he and the children "loved" those visits, that he provided transportation for the children when he was not incarcerated, that he calls Alice's and Sharon's foster mother weekly to speak to Alice and Sharon, that he calls Theo's and Daryl's foster father weekly to talk to Theo and Daryl, that Jerome testified that he assumed parental responsibility "[t]o the best of his ability" while he was incarcerated, and that he worked while incarcerated so that he could pay child support even though he "could have asked for them to stop" the child support.

does not negate the fact that the above-referenced evidence was sufficient for the jury to conclude that Adam failed to assume parental responsibility for the children. *See supra* ¶¶7-13; ***Morden***, 235 Wis. 2d 325, ¶38. Specifically, there was clear and convincing evidence that Adam had minimal contact with the children during his periods of incarceration (much due to his acts leading to his repeated incarceration), he had no contact with their schools or health care providers after they were removed from his care, and he neglected to provide care or support for the children. As such, under our standard of review, we cannot overturn the jury's finding and verdict. *See **State v. Quinsanna D.***, 2002 WI App 318, ¶30, 259 Wis. 2d 429, 655 N.W.2d 752.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.