IN RE the TERMINATION OF PARENTAL RIGHTS to
IDELLA W., A Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

LAVELLE W., Respondent-Appellant.
[Case No. 2005AP1604]

IN RE the TERMINATION OF PARENTAL RIGHTS to
LAVELLE W., JR., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

LAVELLE W., Respondent-Appellant.
[Case No. 2005AP1605]

IN RE the TERMINATION OF PARENTAL RIGHTS to
LARDELLE A., A Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

LAVELLE W., Respondent-Appellant.
[Case No. 2005AP1606]

Court of Appeals

*Nos. 2005AP1604, 2005AP1605, 2005AP1606. Submitted on
briefs November 1, 2005.—Decided November 8, 2005.*

2005 WI App 266

504

(Also reported in 708 N.W.2d 698.)

506

On behalf of the respondent-appellant, the cause was submitted on the brief of *Lynn Ellen Hackbarth*, of the *Law Offices of Lynn Hackbarth*, of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *E. Michael McCann*, district attorney, and *Mary M. Sowinski*, assistant district attorney, of Milwaukee.

On behalf of the guardian ad litem, a brief was filed by *Danuta E. Kurczewski*, of the guardian ad litem division of the Legal Aid Society of Milwaukee, Inc.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J.   Lavelle W. appeals from orders terminating his parental rights to Idella W., Lavelle W., Jr., and Lardelle A. He contends that he was denied meaningful participation in the proceedings, and, also, that there was insufficient evidence for the trial court to conclude that termination of his parental rights was in the children's best interests. We do not reach Lavelle W.'s second argument, however, because we conclude that he was not able to meaningfully participate.

¶ 2.   Birth-parents "have constitutionally protected rights to raise their children as they see fit, and these rights may only be circumscribed if the government proves that there is a 'powerful countervailing interest.' " *Richard D. v. Rebecca G.*, 228 Wis. 2d 658, 661, 599 N.W.2d 90, 92 (Ct. App. 1999) (quoted sources and one internal quotation mark omitted). Thus, "unless the birth-parent has either done something, or failed to do something, to trigger erosion of the constitutional wall that prevents the State from intruding on the birth-parent's constitutionally protected rights, the fact that the child might be better off somewhere else is

an insufficient reason to breach that wall." *Id.*, 228 Wis. 2d at 663 n.4, 599 N.W.2d at 93 n.4. Accordingly, "a proceeding to terminate parental rights addresses a fundamental right which requires judicial protection." *D.G. v. F.C.*, 152 Wis. 2d 159, 166, 448 N.W.2d 239, 242 (Ct. App. 1989). But "judicial protection" is meaningless unless a person whose fundamental rights may be abridged has an "opportunity to be heard at a meaningful time and in a meaningful manner." *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 701, 530 N.W.2d 34, 42 (Ct. App. 1995); *see also D.G.*, 152 Wis. 2d at 167, 448 N.W.2d at 243 ("We view the ability of a respondent in a termination of parental rights proceeding to meaningfully participate as a right which requires similar protection by the court."). Whether participation has been "meaningful" is a constitutional fact subject to our independent review. *Rhonda R.D.*, 191 Wis. 2d at 700, 530 N.W.2d at 42. The trial court, however, has discretion on how to guarantee that a birth parent's participation in proceedings to terminate his or her parental rights is meaningful. *See D.G.*, 152 Wis. 2d at 162–163, 448 N.W.2d at 240–241.

¶ 3. Ideally, a person whose parental rights the State seeks to terminate should be present at the proceedings, so he or she can not only see and hear what is going on and assess the witnesses' demeanor, but also assist his or her lawyer without any undue difficulties. The trial court and all the participants recognized this, but Lavelle W. was, as the assistant district attorney representing the State told the trial court, in the "Witness Protection Program" of the United States Bureau of Prisons. Nevertheless, everyone involved in the case believed that Lavelle W. would be produced for the hearings. That changed, however, apparently at the last

minute, one week before the trial was scheduled to start, as the assistant district attorney explained to the trial court:

> I learned yesterday afternoon from Carol Kraft, the Assistant U.S. Attorney for Milwaukee, who is in charge of his case, that the plan that we all had, that he was going to be produced for the trial, is no longer going to happen. She apparently—I don't know if it was from Washington or where she got the call from, but somebody said, "We are not bringing him. This is a civil case, and we don't bring prisoners for civil cases." Now, I am not sure, I believe that is a standard policy, so I am not sure whether he is not being produced because he is a federal prisoner, period, or because he is a federal prisoner in the Witness Protection Program. I don't know the status of that, and I haven't gotten any further answers.

The assistant district attorney also told the trial court that video-conferencing was not possible, given constraints that were not fully explained on the Record, other than there was no suitable video-conferencing facility where Lavelle W. was living or to which he could be easily taken. Lavelle W.'s lawyer explained that he and Kraft tried to call the person who told Kraft that Lavelle W. would not be produced, but they were unsuccessful, and, moreover, that they had explored a video-conferencing setup but that he was uncertain that it could be arranged before the trial was set to start. Lavelle W.'s lawyer was, however, sensitive to the need for Lavelle W. to be able to meaningfully participate, and that using the telephone was the least attractive alternative:

> I'm just wondering if before we take this approach of participation by telephone, I think we need to explore all the other options, in terms of making sure that

everything is squared away, have my client either video-conferenced or actually physically brought here before we start resorting to a last resort. And I think this phone participation is a last resort.

¶ 4. The trial court ultimately decided to go with a telephone hookup, although it recognized potential problems:

And I am going to look at it very strictly, quite frankly, that we can hear from every single spot in the courtroom. And it is not a good courtroom for the acoustics. I mean, phones don't always pick up voices. Very rarely do people on the phone line hear everything that is going on.

Although the Record indicates that the trial court also spoke with the assistant United States attorney and tried to informally cut through the bureaucracy, there were formal avenues to get Lavelle W. into court that were not explored.

¶ 5. 28 C.F.R. §§ 527.30 and 527.31 guide the United States Bureau of Prisons in determining when and under what circumstances a federal prisoner will be produced when he or she is needed in state court, and, contrary to what Kraft was apparently told, the regulations *do* envision producing federal prisoners for civil proceedings. Section 527.30 provides:

The Bureau of Prisons will consider a request made on behalf of a state or local court that an inmate be transferred to the physical custody of state or local agents pursuant to state writ of habeas corpus ad prosequendum or ad testificandum. The Warden at the institution in which the inmate is confined is authorized to approve this transfer in accordance with the provisions of this rule.

Section 527.31 provides:

(a) These procedures apply to state and federal inmates serving sentences in federal institutions, and shall be followed prior to an inmate's transfer to state or local agents other than through the Interstate Agreement on Detainers.

(b) The Warden shall authorize transfer only when satisfied that the inmate's appearance is necessary, that state and local arrangements are satisfactory, that the safety or other interests of the inmate (such as an imminent parole hearing) are not seriously jeopardized, and that federal interests, which include those of the public, will not be interfered with, or harmed. Authorization may not be given where substantial concern exists over any of these considerations.

(c) The request for transfer of custody to state agents shall be made by the prosecutor or other authority who acts on behalf of the court and shall be directed to the Warden of the institution in which the inmate is confined. The request shall be made by letter. The request shall indicate the need for appearance of the inmate, name of the court, nature of the action, date of the requested appearance, name and phone number of the state agency or other organization with responsibility for transporting the inmate, the name and location where the inmate will be confined during legal proceedings, and anticipated date of return. *For civil cases, the request shall also indicate the reason that production on writ is necessary and some other alternative is not available.* The applying authority shall provide either at the time of application or with the agent assuming custody, a statement signed by an authorized official that state or local officials with custody will provide for the safekeeping, custody, and care of the inmate, will assume full responsibility for that custody, and will return the inmate to Bureau of Prisons' custody promptly on conclusion of the inmate's appearance in the state or local proceedings for which the writ is issued.

511

(d) A certified copy of the writ (one with the Seal of the Court) must be received at the institution prior to release of the inmate. Institution staff shall verify the authenticity of the writ.

(e) Institution staff shall maintain contact with the state or local law enforcement agency with responsibility for transfer of the inmate to determine the exact date and time for transfer of custody. If the inmate is awaiting federal trial or has federal civil proceedings pending, staff must clear the transfer through the U.S. Attorney.

(f) Institution staff shall determine from the state or local agency the names of the agents assuming custody. Staff must carefully examine the credentials of the agents assuming custody. In any doubtful case, verification should be sought.

(g) *Transfers in civil cases pursuant to a writ of habeas corpus ad testificandum must be cleared through both the Regional Counsel and the Warden. Transfer ordinarily shall be recommended only if the case is substantial, where testimony cannot be obtained through alternative means such as depositions or interrogatories, and where security arrangements permit.* Postponement of the production until after the inmate's release from federal custody will always be considered, particularly if release is within twelve months.

(h) Release of inmates classified as Central Inmate Monitoring Cases requires review with and/or coordination by appropriate authorities in accordance with the provisions of 28 CFR part 524, subpart F.

(Emphasis added.)

¶ 6. These provisions were a place for the parties to start, and, certainly, as we have seen, a parent's interest in not having his or her parental rights terminated is, to use the language of 28 C.F.R. § 527.31(g), "substantial." But there was another avenue as well.

512

Under the federal "all writs" act, 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.") and the provision authorizing federal courts to issue writs of *habeas corpus ad testificandum* for prisoners in the federal prison system, 28 U.S.C. § 2241(c)(5) ("The writ of habeas corpus shall not extend to a prisoner unless ... [i]t is necessary to bring him into court to testify or for trial."), a federal court in Milwaukee could have required that the Bureau of Prisons produce Lavelle W. for the termination-of-parental-rights trial. *See Barber v. Page*, 390 U.S. 719, 724 (1968) ("28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of habeas corpus ad testificandum at the request of state prosecutorial authorities."); *Gordon v. Woodring*, No. C04–04182JF, 2005 WL 464636, at *2–*3 (N.D. Cal. Feb. 28, 2005) (federal writ of *habeas corpus ad testificandum* may be used as an alternative to the procedures in 28 C.F.R. §§ 527.30 and 527.31) (the prisoner need not be held within the territorial jurisdiction of the court).

¶ 7.  There is nothing in the Record that indicates that any of these procedures, either under the applicable statutes or under the regulations, were explored before resorting to what Lavelle W.'s lawyer called the "last resort"—the telephone. Moreover, because the State is the petitioner, *D.G.* recognizes that the trial court would have been within its discretion to order the State to absorb the costs of producing Lavelle W. for the hearings. *D.G.*, 152 Wis. 2d at 168–169, 448 N.W.2d at 243.

¶ 8.  Our discussion so far would be academic if the telephone solution allowed Lavelle W. to *meaningfully* participate in the termination-of-parental-rights

proceedings. *See Rhonda R.D.*, 191 Wis. 2d at 701–702, 530 N.W.2d at 42–43 (whether ability to participate is "meaningful" must be determined case-by-case). Although the trial court concluded that Lavelle W. was able to meaningfully participate, that is a matter, that, as noted, we review *de novo.* In our view, any alternative to a parent's personal presence at a proceeding to terminate his or her parental rights *must,* unless either the parent knowingly waives this right or the ministerial nature of the proceedings make personal-presence unnecessary, *be functionally equivalent to personal presence:* the parent must be able to assess the witnesses, confer with his or her lawyer, and, of course, hear *everything* that is going on. The Record here reveals that at times Lavelle W.'s ability to hear the proceedings faded in and out, and, at least at one point, was temporarily interrupted by static.

¶ 9.   Although it may very well be that Lavelle W. was able to hear significantly more than he was unable to hear, that is not sufficient because periodic or sporadic inaudibility, both of which marred Lavelle W.'s connection to the proceedings, significantly truncates a party's ability to *fully* comprehend what is going on, and thus hinders the ability to get a feel for the proceedings—a mix of spoken words and body language—and, therefore, meaningfully consult with his or her lawyer concerning not only the testimony but also what everyone else may be doing in court. In sum, we conclude that Lavelle W. was not able to meaningfully participate in the proceedings, and, accordingly, we must vacate the orders terminating his parental rights and remand to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Orders vacated and cause remanded.