COURT OF APPEALS
DECISION
DATED AND FILED

September 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1214**

STATE OF WISCONSIN

Cir. Ct. No. 2023TP207

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.W., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

G.W.,

      RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed.*

¶1    COLÓN, P.J.[1] Gabriel appeals from the circuit court's order terminating his parental rights to his daughter Sarah.[2] Gabriel argues that the court denied him due process and erroneously exercised its discretion when it did not allow him to appear virtually[3] at the termination of parental rights ("TPR") dispositional hearing. We disagree, and for the following reasons, we affirm.

## BACKGROUND

¶2    When Sarah was approximately seven months old she was removed from her parents' home due to concerns about her mother's mental health, her parents' domestic violence incidents, and Gabriel's alcohol abuse. On November 30, 2023, a CHIPS dispositional order was entered specifying the conditions Gabriel was required to complete in order to have Sarah returned to his care. On December 13, 2023, the State filed the TPR petition underlying this case and alleged as grounds for termination that Gabriel failed to assume parental responsibility pursuant to WIS. STAT. § 48.415(6).[4] During the course of the TPR proceedings Gabriel was incarcerated.

¶3    At a hearing on July 17, 2024, Gabriel, appearing virtually, pled no contest to the State's allegations and after conducting a colloquy with Gabriel the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading, we adopt the pseudonyms used by the parties to refer to the family in this confidential matter. *See* WIS. STAT. RULE 809.19(1)(g).

[3] We use the term "virtually" to describe appearing in court via the use of videoconferencing technology permitted by WIS. STAT. § 885.54 such as Zoom. *See* WIS. STAT. § 885.52(3).

[4] The State also sought to terminate the mother's parental rights. The mother's rights are not at issue on this appeal.

circuit court accepted his plea. The court then heard testimony to prove the alleged ground, and subsequently found that the State had established that Gabriel failed to assume parental responsibility and found him unfit. *See* WIS. STAT. § 48.424(4). The court then explained to Gabriel that the dispositional hearing would be in person, he was ordered to appear in court, the court would enter an order to produce Gabriel if he was still incarcerated, and that if Gabriel failed to appear then he could be found in default and lose his chance to participate. The court stressed that it was "very important that you come to court." Gabriel acknowledged this and did not object to the in-person nature of the hearing.

¶4 The dispositional hearing was first scheduled for October 29, 2024; however, Gabriel sought an adjournment. The circuit court considered his motion on October 29, 2024, and, after hearing no objection, granted it. The court reiterated that it would enter an order to produce Gabriel so that he will appear in person at the dispositional hearing now scheduled for January 3, 2025. Gabriel did not object.

¶5 The week of the dispositional hearing, Gabriel, through his attorney, reached out to the clerk's office to inquire about whether Gabriel could appear at the hearing virtually via Zoom. In response, the circuit court informed Gabriel that he must appear in person; however, the court also said that it would consider a motion to appear virtually if such a motion was filed. Gabriel never moved to appear virtually.

¶6 Gabriel remained incarcerated at the time of the dispositional hearing so the circuit court ordered his production and transport to court. On January 2, 2025, the State informed the court that Gabriel "refused to get on the transport van for court" and would not be attending the dispositional hearing in

person. The State made arrangements for him to appear via Zoom as a "precautionary measure."

¶7 At the dispositional hearing, the circuit court noted that Gabriel was in the court's Zoom waiting room, but it never permitted Gabriel to appear virtually. It then asked Gabriel's attorney why Gabriel did not appear in person as ordered. She conceded that "[t]here is nothing that made it impossible for him to come," and elaborated that Gabriel told her that "medical health concerns make it difficult for when he returns to the institution because they have, you know, protocols and he says it violates his health and so he doesn't feel that he wanted to be here and have to be transported back and other procedures." The court inquired as to what the specific protocols and his medical concerns were and Gabriel's attorney replied that Gabriel's concerns had to do with "[i]solation or something like that" and that his health concern was "something with his skin but I don't know much more than that."

¶8 Gabriel's attorney also informed the circuit court that she spoke with Gabriel the day prior to the hearing and told him that he needed to appear in person or risk being defaulted on, and Gabriel had told her to ask for another adjournment. The court found that Gabriel did not provide a sufficient reason for failing to appear in person as ordered. The court then removed Gabriel from the Zoom waiting room and proceeded with the dispositional hearing without him, but allowed his attorney to continue to represent his interests. Ultimately, the court found that the termination of Gabriel's parental rights was in the best interests of Sarah and terminated them.

¶9 Gabriel appeals.

**DISCUSSION**

¶10 Gabriel argues that he was denied due process when the circuit court refused to allow him to appear virtually because he was unable to meaningfully participate at the dispositional hearing. He also argues that the court erroneously exercised its discretion by failing to consider the criteria under WIS. STAT. § 885.56(1) before precluding his virtual appearance. We disagree, and address each argument in turn.

¶11 "A parent's interest in the companionship, care, custody, and management of his or her child is cognizable and substantial, and the integrity of the family is subject to constitutional protections through the due process clause of the state and federal constitutions." ***D.G. v. F.C.***, 152 Wis. 2d 159, 167, 448 N.W.2d 239 (Ct. App. 1989). "The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 701, 530 N.W.2d 34 (Ct. App. 1995) (citing to ***Mathews v. Eldridge***, 424 U.S. 319, 333 (1976)).

¶12 "Ideally, a person whose parental rights the State seeks to terminate should be present at the proceedings, so he or she can not only see and hear what is going on and assess the witnesses' demeanor, but also assist his or her lawyer without any undue difficulties." ***State v. Lavelle W.***, 2005 WI App 266, ¶3, 288 Wis. 2d 504, 708 N.W.2d 698. "Whether a parent has been afforded the opportunity to participate meaningfully is a question of constitutional fact, which means that we defer to the [circuit] court's factual findings unless they are clearly erroneous, but apply constitutional principles to the facts as found de novo." ***Waukesha Cnty. DHHS v. Teodoro E.***, 2008 WI App 16, ¶10, 307 Wis. 2d 372, 745 N.W.2d 701.

¶13     First, Gabriel argues that he was denied due process because the circuit court precluded him from appearing virtually without finding "good cause to the contrary" as required by WIS. STAT. § 48.335(4).[5]  However, § 48.335(4) does not apply to dispositional hearings in TPR proceedings.  This section only applies to hearings in CHIPS cases.  Sec. 48.335(4) (limiting its application to "hearings under this section, [WIS. STAT. §§] 48.357, 48.358, 48.363, or 48.365").  Although Gabriel was entitled to an in-person dispositional hearing, he was not necessarily entitled to a virtual one.  *See* WIS. STAT. § 885.60(2)(a).  Therefore, the court did not deny Gabriel due process by precluding him from appearing virtually.

¶14     Next, Gabriel cites to *Teodoro E.* and *Lavelle W.* to support his position that the circuit court was required to permit him to appear virtually so that he would have been able to meaningfully participate at the dispositional hearing.  *See Teodoro E.*, 307 Wis. 2d 372, ¶¶1, 10, 13, 15, 19; *Lavelle W.*, 288 Wis. 2d 504, ¶¶8-9.  Neither case supports that Gabriel was entitled to participate at the hearing virtually.  Both cases instead involved the question of whether a specific alternative to in-person participation—chosen after in-person participation was deemed unfeasible—allowed the parents to meaningfully participate.

¶15     In *Teodoro E.*, the parent was "deported and excluded from the United States for ten years."  *Id.*, 307 Wis. 2d 372, ¶5.  "[A]ll parties, [the parent's] attorney included, explored every option that they were aware of for

---

[5] WISCONSIN STAT. § 48.335(4) provides in part, "At hearings under this section, [WIS. STAT. §§] 48.357, 48.358, 48.363, or 48.365, on the request of any party, unless good cause to the contrary is shown, the court may admit testimony on the record by telephone or live audiovisual means, if available, under [WIS. STAT. §] 807.13(2)."

getting [the parent] into the Waukesha courtroom" before devising a way for the parent to appear virtually. ***Id.***, ¶¶1, 16.

¶16 In ***Lavelle W.*** the parent was a federal prisoner "in the 'Witness Protection Program' of the United States Bureau of Prisons." ***Id.***, 288 Wis. 2d 504, ¶3. The parties were under the impression that the parent would be able to appear in person for the TPR proceedings until a week before trial when the Assistant U.S. Attorney informed the State that the parent would not be produced. ***Id.*** The parties and circuit court subsequently attempted to produce the parent, but failed to do so before they resorted to having the parent appear via telephone.[6] ***Id.***, ¶¶3-4.

¶17 Whereas here the circuit court gave Gabriel multiple notices that the dispositional hearing would be in person, explicitly gave Gabriel an opportunity to move to appear virtually if he wanted to, and arranged for Gabriel's physical presence at the hearing. Instead of attempting to appear in person or move to appear virtually, Gabriel refused to get on the transport van to court.

¶18 Due process requires that courts give parents an *opportunity* to meaningfully participate. ***Rhonda R.D.***, 191 Wis. 2d at 701. Gabriel was afforded the opportunity to meaningfully participate in person at the dispositional hearing and did not avail himself of it. Additionally, although Gabriel disagrees

---

[6] We note that in ***State v. Lavelle W.*** this court discussed how, although the parties and the circuit court attempted to produce the parent, there was nothing in the record to suggest that any attempts were made under the procedures for production pursuant to the relevant federal statutes and regulations. ***Id.***, 2005 WI App 266, ¶¶3, 7, 288 Wis. 2d 504, 708 N.W.2d 698. Regardless of whether the proper procedures were followed, the parties in ***Lavelle W.*** did attempt to produce the parent so that he could appear in person before the circuit court resorted to a "telephone solution" that we ultimately concluded did not allow the parent to meaningfully participate. ***Id.***, ¶¶8-9.

with the circuit court's finding that his health concern would not have prevented him from appearing in person, he provided the court with minimal information regarding his concern about "something with his skin," conceded that "[t]here is nothing that made it impossible for him" to appear in person, and gave no explanation for why he did not move to appear virtually when given the chance prior to the hearing. We cannot say that the court's finding is clearly erroneous. Therefore, we conclude that Gabriel was not denied due process because he was afforded the opportunity to meaningfully participate at the dispositional hearing in person.

¶19 Gabriel also argues that the circuit court erroneously exercised its discretion because it had a "mandatory duty" to consider the criteria under WIS. STAT. § 885.56(1) before refusing to allow him to participate virtually. We disagree.

¶20 The circuit court has discretion to permit a party to appear virtually in a TPR proceeding "[s]ubject to the standards and criteria set forth in [WIS. STAT. §§] 885.54 and 885.56 and to the limitations of [WIS. STAT. § 885.60(2).]" Sec. 885.60(1). We will sustain the circuit court's discretionary action if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶21 Whether WIS. STAT. § 885.56 imposes a mandatory duty on the circuit court is a question of statutory construction the we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 405-06, 565 N.W.2d 506 (1997). "Statutory language is given its common, ordinary, and accepted meaning" and is "interpreted in the

context in which it is used[.]" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶22    WISCONSIN STAT. § 885.56 states, "In determining in a particular case whether to permit the use of videoconferencing technology and the manner of proceeding with videoconferencing, the circuit court *may consider* one or more of the" criteria under § 885.56(1)(a)-(*l*).  (Emphasis added.)  The use of the word "may" indicates that § 885.56 permits, but does not require, the circuit court to consider the criteria.  *See **Heritage Farms, Inc. v. Markel Ins. Co.***, 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 (noting that "we generally construe the word 'may' as permissive").

¶23    Additionally, the following comment that our supreme court included when it promulgated WIS. STAT. § 885.56 further confirms the permissive meaning of the plain language:

> [T]he court may deny the use of videoconferencing technology in any circumstance, *regardless of the guidelines*.  This is consistent with the intent of this legislation to vest circuit courts with broad discretion to advance the use of videoconferencing technology in court proceedings under the standards and guidelines set out, but to *reserve to courts the prerogative to deny its use without explanation*.

Supreme Court Comment, 2008, § 885.56 (emphasis added).  This is consistent with the circuit court's broad discretion to control its judicial business.  *See **Latham v. Casey & King Corp.***, 23 Wis. 2d 311, 314-15, 127 N.W.2d 225 (1964).  Thus, the circuit court was not required to discuss the criteria.  Therefore, the court did not err when it refused to permit Gabriel to appear virtually without discussing the criteria under § 885.56 first.

¶24 Finally, Gabriel argues that the circuit court erred by basing its decision to preclude him from appearing virtually on a fact unsupported by the record. Gabriel contends that the statement, that he "declined to appear for the hearing today," that the circuit court made as it summarized the dispositional proceedings before rendering a decision on the TPR petition demonstrates that the court relied on an incorrect finding because Gabriel did appear virtually. We disagree.

¶25 The record shows that the circuit court was well aware that Gabriel was in the Zoom waiting room and attempting to appear virtually. The court stated at the start of the dispositional hearing, "I will note that [Gabriel] is in the Zoom waiting room," and "I didn't give him the okay to appear by Zoom so frankly, he shouldn't be here by Zoom." Additionally, after finding that Gabriel did not have a sufficient reason to disobey the court's orders, it removed him from the Zoom waiting room before proceeding with the hearing. Therefore, we conclude that the court's characterization of Gabriel's refusal to appear in person at an in-person hearing as "declin[ing] to appear for the hearing today" does not demonstrate that the court relied on incorrect information when it precluded Gabriel from appearing virtually.

## CONCLUSION

¶26 We conclude that the circuit court did not deny Gabriel due process or erroneously exercise its discretion when it precluded him from appearing virtually at the TPR dispositional hearing. Accordingly, we affirm.

*By the Court.*—Order affirmed.

10

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.